## OPINION OF THE JUSTICES TO THE HOUSE OF REPRESENTATIVES.

*Constitutional Law*, Separation of Powers, Appointment of civil officer, General Court, Judiciary, Delegation of powers. *General Court. Judiciary. Public Officer.*

Proposed legislation providing that the President of the Senate, the Speaker of the House of Representatives, and the Chief Justice of the Supreme Judicial Court would each appoint two members of a commission created by the act to administer a department with operational responsibilities for electronic data processing and telecommunications in all branches of the State government, would violate art. 30 of the Declaration of Rights of the Massachusetts Constitution. [642-644]

Proposals in pending legislation to create a commission empowered to "oversee, manage and develop policy for the . . . electronic data processing and telecommunication needs" of the State government, and to "oversee the management of," and to "approve or disapprove all projects" of, a department with operational responsibilities for data processing and telecommunication services and fiscal control over all State agencies using them, "including the General Court and the Judicial Department," would, if the commission and the department were placed in the executive branch of government, interfere with internal functioning of the judiciary and of the Legislature, and would violate art. 30 of the Declaration of Rights of the Massachusetts Constitution. [645-648]

On March 29, 1974, the Justices submitted the following answers to questions propounded to them by the House of Representatives.

To the Honorable the House of Representatives of the Commonwealth of Massachusetts:

The Justices of the Supreme Judicial Court respectfully submit these answers to the questions set forth in an order adopted by the House on February 21, 1974, and transmitted to us on February 25, 1974. The order recites the

pendency before the General Court of a bill, House No. 5293, recommended in a message from the Governor; a copy of each was transmitted with the order. As more specifically set out later in this opinion, the bill provides for an electronic data processing and telecommunications commission and department which would centralize and operate all of the electronic data processing and tele-communications services needed by all branches of the government of the Commonwealth.

The questions are:

"1. Would the enactment of the bill printed in House, No. 5293 be in violation of Article XXX of Part the First of the Constitution of the Commonwealth providing for the separation of the Legislative, Executive and Judicial Departments?

"2. Would the enactment of the bill printed in House, No. 5293 which applies to the housing court of the City of Boston be in violation of Article II of the Amendments to the Constitution of the Commonwealth establishing home rule for municipalities?"

1. Initially, we note that the concept of a separation of powers is fundamental to our form of government. While not explicitly delineated in the Federal Constitution it is implicit in the structure of the government there created and it finds expression, in varying forms, in the Con-stitutions of most of the States. The Massachusetts ver-sion, like those of only a handful of other States, is in a most explicit form, and on its face calls for a complete and rigid division of all powers among the three branches.[1] "The court is ever solicitous to maintain the sharp division

---

[1] Article 30 of our Declaration of Rights: "In the government of this com-monwealth, the legislative department shall never exercise the executive and judicial powers, or either of them: the executive shall never exercise the legislative

between the three departments of government as declared by art. 30 of the Declaration of Rights." *Attorney Gen.* v. *Brissenden*, 271 Mass. 172, 183 (1930). We have stated that "[t]hese limitations, though sometimes difficult of application, must be scrupulously observed." *Opinion of the Justices*, 302 Mass. 605, 622 (1939).

Nevertheless, we recognize that an absolute division of the three general types of functions is neither possible nor always desirable. The growth in this century of administrative agencies, called by some a "fourth branch" of government, has sometimes tended to obscure the admittedly indistinct boundary lines between the three branches and led some courts to adopt such descriptions as "quasi-judicial" or "quasi-legislative."[2] Scholars in this field particularly have questioned the strict application of the doctrine. Professor Jaffe argues that complete exclusiveness is absurd as functions cannot be classified executive, legislative or judicial so clearly.[3] He views the logic of separation of powers as polarity rather than strict classification. Professor Davis urges that the true principle is not the separation of three kinds of power but a system of checks to prevent undue concentration of power.[4] He quotes Justice Holmes, dissenting in *Springer* v. *Government of Philippine Islands*, 277 U. S. 189, 211 (1928): "It does not seem to need argument to show that however we may disguise it by veiling words we do not and cannot carry out the distinction between legislative and executive action with mathematical precision and divide the branches into

and judicial powers, or either of them: the judicial shall never exercise the legislative and executive powers, or either of them: to the end it may be a government of laws and not of men."

In order to avoid confusion with the use of the term "Department" to refer to the specific agency set up by the bill we will refer in this opinion to the three major divisions of government as "branches."

[2] Davis, Administrative Law Treatise, § 1.09 (1958).

[3] Jaffe, Judicial Control of Administrative Action, 28 (1965).

[4] Davis, Administrative Law Treatise, § 1.09 (1958).

watertight compartments, were it ever so desirable to do so, which I am far from believing that it is, or that the Constitution requires."

The laudable motives of the authors of the present bill, the promotion of economy and efficiency in government, often dictate coöperation among the coördinate branches. Such efforts must, however, take place within the limitations of art. 30, which was not lightly adopted, and must be complied with. Thus, this court has upheld the assignment of a legislative investigation to an executive officer, as the Legislature may delegate "incidental powers which it may exercise itself in aid of its primary functions but which do not partake of the nature of law making." *Attorney Gen.* v. *Brissenden*, 271 Mass. 172, 181 (1930). We have stated that "[t]here is nothing inherently repugnant to the concept of separation of powers that agents of one branch also act as agents of . . . [an] other." *Commonwealth* v. *Favulli*, 352 Mass. 95, 101 (1967). Some flexibility in allocating functions whose classification would be at best ambiguous is no doubt desirable, so long as it "creates no interference by . . . [one] department with the power of . . . [another] department." *Opinion of the Justices*, 208 Mass. 610, 613 (1911). This latter development is the essence of what cannot be tolerated under art. 30.

We believe the proposed bill violates this core principle and also transgresses specific precedent on the allocation of governmental powers. It would therefore be unconstitutional if passed. We discuss the specific reasons below.

### APPOINTMENTS.

The major supervisory body created by House No. 5293 would be the Electronic Data Processing and Telecommunications Commission (the Commission). It would have administrative authority over the Electronic Data Processing and Telecommunications Services Department (the Department) which in turn would have operational responsibility for the functions in all branches of State

government within its area of expertise. The bill calls for the nine member Commission to be appointed as follows: Two each by and at the pleasure of the Governor, the President of the Senate, the Speaker of the House of Representatives, and the Chief Justice of the Supreme Judicial Court, for varying terms of office, and the ninth to be chosen by a two-thirds vote of the other eight members of the Commission. Several of our prior opinions indicate clearly that the method of selection outlined is constitutionally defective.

"The creation of a public office is a legislative function, but the appointment of a particular person to an office is the function of the executive department." *Commissioner of Admn.* v. *Kelley*, 350 Mass. 501, 505 (1966). The Legislature may confer this power of appointment on the Governor or on another public officer or board within the executive branch. *Brown* v. *Russell*, 166 Mass. 14, 25 (1896). *Sheridan* v. *Gardner*, 347 Mass. 8 (1964). The Legislature may also make a particular public officer an automatic member of a newly created board or commission as that in effect merely confers new powers on that officer. *Opinion of the Justices*, 302 Mass. 605, 620 (1939).

"It is settled, however, that this power of appointment may not be conferred by the General Court upon the courts — the judicial department — with respect to officers or boards not exercising a function that is judicial or incidental to the exercise of judicial powers . . . ." *Opinion of the Justices*, 302 Mass. 605, 622 (1939). See *Opinion of the Justices*, 300 Mass. 596, 599 (1938). Though the Commission's duties would be in some sense incidental to the work and functions of the courts, it is quite clearly also much broader than that. We believe that language used in the case which established the precedent for the principle against appointments by the judiciary is apposite here: "The people of Massachusetts . . . have made most careful provision . . . for removing the judiciary, and especially this court, from political influences of every kind, as far as possible. . . . We cannot exercise this power as judges, because it is not a judicial function . . . ." *Case of Super-*

*visors of Election*, 114 Mass. 247, 249, 251 (1873). Cf. *Burnside* v. *Bristol County Bd. of Retirement*, 352 Mass. 481 (1967).

While the court clearly has "the power to appoint or to remove certain officers whose duties are closely connected with the judicial work of the court," *LaChapelle* v. *United Shoe Mach. Corp.* 318 Mass. 166, 170 (1945), that power does not extend to officers such as members of the Commission whose work would affect the functioning of the other two major branches of government as well. Appointments which could not be made by the Supreme Judicial Court as a body, because not judicial in nature, cannot be made by its Chief Justice acting individually. Cf. *Opinion of the Justices*, 303 Mass. 615 (1939) (quoted immediately below).

As for the proposed appointments by the President of the Senate and the Speaker of the House of Representatives, "in our opinion the power of appointing members of such boards is so far executive in nature that it cannot be conferred by fixed law upon such purely legislative officers as senators and representatives, acting in any manner other than that prescribed by the Constitution for action by the General Court, without violating the provisions of art. 30 of the Declaration of Rights. But even if the power of appointing members of such boards were to be regarded as a legislative power, it could be exercised by the General Court or its members only in the manner prescribed by the Constitution for action by the General Court, and could not be delegated to such members acting in a different manner." *Opinion of the Justices*, 303 Mass. 615, 624 (1939). In another opinion the Justices of this court explicitly stated that "the power of appointing such members cannot be conferred by law upon the President of the Senate and the Speaker of the House of Representatives, whether or not such members are required to be chosen from among the members of the Senate and of the House." *Opinion of the Justices*, 302 Mass. 605, 620 (1939).

## INTERFERENCE WITH THE JUDICIARY.

If the appointment provisions were revised to conform to constitutional requirements and the Commission and the Department were placed, as seems logical from their functions, in the executive branch of government, the question would nevertheless remain whether there would be an interference by that branch with the function of the judiciary.[5] If so, it would be a clear violation of art. 30. *Opinion of the Justices*, 208 Mass. 610, 613 (1911). *Walton Lunch Co.* v. *Kearney*, 236 Mass. 310 (1920).

The Governor's message to the Legislature recommending passage of House No. 5293 asserts that such concerns are "mitigated by the fact that the department will be a service department, not a policy-making department in the traditional sense." Were the Commission and the Department to function in a strictly service capacity for the several branches of government, with no involvement in their internal functioning, the requirements of art. 30 would be met. Clearly, for example, the executive branch may manage public buildings without constitutional impediment. However, the decision of this court in *O'Coin's, Inc.* v. *Treasurer of the County of Worcester*, 362 Mass. 507 (1972), requires the provision of adequate court house facilities. Cf. G. L. c. 213, § 8. House No. 5293 does not require the Commission or Department to provide the courts with adequate data processing services. Furthermore, data collection and processing are very different from

---

[5] It is perhaps worth noting that the protection of the independence of the judiciary was the exclusive purpose of the original draft of the Massachusetts separation of powers clause. As drafted by John Adams and reported by the committee as art. 31 of the draft, the clause read as follows: "The judicial department of the State ought to be separate from, and independent of, the legislative and executive powers." J. of the Convention for Framing a Constitution of Government (Mass. Bay) (1779-1780) 197. See generally 2 Mass. L. Q. (No. 5) 383-393 (1917).

the management of buildings. The manner in which data are collected and stored in a carefully programmed computer has major implications for the manner in which they can later be used. Control over the collection, processing, and dissemination of data is thus at least indirect control over the information processed and the activities of personnel engaged in its collection and use. This basic fact belies the assurance in § 8 of the bill as to control and regulation by the source agency. There are many incidents of ownership and it seems clear that the bill, despite § 8, removes some of them from the source agency and places them with the Commission. For example, in certain cases requiring special security provisions, such as impoundment of papers, these procedures would be unquestionably jeopardized by the contemplated bill.

Our concern as to the effect of such indirect influence over other branches of government is amplified by the policy making role assigned by the bill to the Commission.[6]

In § 3 the Commission is "authorized and empowered: (1) To oversee, manage and develop policy for the Commonwealth's electronic data processing and telecommunications needs and to oversee the management of . . . [the Department]." "(4) To approve or disapprove all projects for the Department and to set priorities for such projects. . . . (11) To perform all other acts necessary and proper for the execution of the purposes of this act." In § 4 the Department is stated to be "responsible for carrying out the policy and operational mandates of the Commission" and is "authorized and empowered: (1) To program, plan and budget for all electronic data processing and telecommunications activities . . . which will enable the Department to exercise fiscal control over . . . all such state agencies and departments using electronic data processing

---

[6] For a critical analysis of some of the dangers inherent in such a unified data collecting and processing system, see the remarks of Professor Arthur R. Miller in Automation in the Courts, Its Impact on Record-Making and Record-Keeping, Implications for the Private Citizen and the Public, Association of the Bar of the City of New York, 35-45 (1971).

and telecommunications services including the General Court and the Judicial Department . . . . (4) To develop and maintain project control for all data processing and telecommunications projects."

The potential for dangerous concentration of indirect but very real control over all branches of government inherent in such legislation is substantial. The provisions of the bill providing for a Security and Privacy Council to make "recommendations concerning questions of individual privacy and system security in connection with the collection, storage, dissemination and usage of data processing information pertaining to individuals" ( § 5), and providing a right of hearing before the Council to "[a]ny person who is aggrieved by a decision of the Commission or whose privacy has been violated" ( § 6), neither substantively nor procedurally answer such concerns. Nor does the attenuated right of administrative appeal to a Committee of Conference or judicial appeal under the State Administrative Procedure Act, G. L. c. 30A ( §§ 6 and 7) suffice to do so. The bill creates an agency with power to exert control over all branches of government and thus is entithetical to the notion of separation of powers. This notion does not necessarily preclude judicial participation on a voluntary basis in the sharing of data processing facilities and services, provided that such participation does not involve internal functioning of the judicial branch.

## UNLAWFUL TRANSFER OF POWER FROM LEGISLATURE TO EXECUTIVE.

Apart from the problems of an impermissible scheme of appointments and interference with the judiciary, an additional impediment remains which would alone render the proposed legislation invalid under art. 30. As the plan originates with the General Court the constitutional problem lies not in any usurpation of the power of that body but in the propriety of such a delegation of administrative authority and control from the Legislature to the Execu-

tive. *Opinion of the Justices*, 208 Mass. 610 (1911). *Attorney Gen.* v. *Brissenden*, 271 Mass. 172 (1930). *Opinion of the Justices*, 302 Mass. 605 (1939). *Commonwealth* v. *Favulli*, 352 Mass. 95, 101 (1967). While the particular problems created would not be identical, the potential for interference in the internal functioning of the Legislature would be similar to the effects on the judiciary, the risks of which we noted above.

2. As any consideration of the constitutionality of the proposed bill under art. 2 of the Amendments to the Constitution of the Commonwealth, as amended by art. 89, would appear to be rendered unnecessary by the above discussion of art. 30, we do not answer question 2.

We answer question 1, "Yes."

We beg to be excused from answering question 2.

<div style="text-align: right">

G. JOSEPH TAURO
PAUL C. REARDON
FRANCIS J. QUIRICO
ROBERT BRAUCHER
EDWARD F. HENNESSEY
BENJAMIN KAPLAN
HERBERT P. WILKINS