CLERK OF THE SUPERIOR COURT FOR THE COUNTY OF MIDDLE-
SEX & others *vs.* TREASURER AND RECEIVER GENERAL
& another.

Suffolk.  December 11, 1981. — June 21, 1982.

Present: HENNESSEY, C.J., WILKINS, NOLAN, LYNCH, & O'CONNOR, JJ.

*Court Reorganization Act.  Chief Administrative Justice.  Clerk of Court.
Treasurer and Receiver General.  Constitutional Law,* Separation of
powers of government. *Statute,* Construction. *Attorney General.*

The Chief Administrative Justice of the Trial Court of the Common-
wealth has authority, implicit in powers granted under G. L..c. 211B,
to direct that monies received by clerks in the Superior Court Depart-
ment be consolidated and invested in a centralized bank account to be
administered by the Treasurer and Receiver General of the Common-
wealth.  [521-523]

General Laws c. 35, §§ 22 and 23, and Rule 22 of the Superior Court
(1974) do not prohibit the implementation of a centralized bank ac-
count system by the Chief Administrative Justice of the Trial Court
with the cooperation of the Treasurer and Receiver General of the
Commonwealth whereby monies received by clerks in the Superior
Court Department are consolidated and invested, inasmuch as sub-
sidiary accounts are maintained in the name of each clerk and subject
to the clerk's custody and control, and an accounting system is
established which is capable of segregating and recording each receipt
according to its origin.  [523-524]

The implementation of a centralized bank account system voluntarily by
the Chief Administrative Justice of the Trial Court with the coopera-
tion of the Treasurer and Receiver General of the Commonwealth
whereby monies received by clerks in the Superior Court Department
are consolidated and invested is not an intrusion by the executive
branch of government upon the functioning of the judicial branch, so
as to violate art. 30 of the Massachusetts Declaration of Rights.
[524-525]

The Attorney General, in his discretion, could properly decline to repre-
sent the clerks of the Superior Court Department in an action against
the Treasurer and Receiver General of the Commonwealth and the
Chief Administrative Justice of the Trial Court; however, this court

directed entry of an order, retroactive in effect, appointing other counsel to represent the clerks, and providing compensation for such counsel at public expense. [526]

CIVIL ACTION commenced in the Supreme Judicial Court for the county of Suffolk on July 14, 1981.

Questions of law were reported by *Lynch*, J.

*Edward D. McCarthy* (*Birge Albright* with him) for the plaintiffs.

*Leah S. Crothers*, Assistant Attorney General, for the defendants.

HENNESSEY, C.J.    This action was commenced in the single justice session of this court by fourteen of the fifteen clerks of the Superior Court Department of the Trial Court of the Commonwealth (Superior Court), seeking declaratory and injunctive relief against the Treasurer and Receiver General of the Commonwealth (Treasurer), and the Chief Administrative Justice of the Trial Court (Chief Administrative Justice).  The plaintiffs seek to enjoin the implementation in the Superior Court of a centralized bank account and funds transfer system whereby monies received by them would be consolidated and invested for the benefit of the Commonwealth or for such other beneficiaries as the law requires.  In addition, they seek a declaration regarding the authority of the Treasurer and the Chief Administrative Justice to implement such a program, and the duties of the clerks of the Superior Court with respect to the maintenance of monies paid into court.

Specifically, the plaintiffs challenge the authority of the Chief Administrative Justice to direct that monies received by the Superior Court be invested in this manner.  They allege that compliance with a directive of the Chief Administrative Justice to so invest these monies might constitute a violation of the bond filed by each of them pursuant to G. L. c. 221, § 12, to ensure the faithful performance of official duties.  They allege that art. 30 of the Declaration of Rights of the Massachusetts Constitution, as well as various statutes setting forth the manner in which they are to hold

386 Mass. 517             519

Clerk of Superior Court for County of Middlesex *v.* Treasurer & Receiver General.

monies paid into court, prohibit the implementation of the centralized bank account and funds transfer system. Finally, they maintain that this system may only be carried out pursuant to legislative amendment or, at the least, by promulgation of a Superior Court rule, subject to the approval of the Supreme Judicial Court.

The plaintiffs unsuccessfully sought preliminary injunctive relief from a single justice of this court. Thereafter, on a joint motion of the parties, the single justice reserved and reported four questions of law, upon the pleadings, as well as a statement of agreed facts. Our answers to these questions essentially affirm the authority of the Chief Administrative Justice to implement the proposed plan with the Treasurer.

The questions reported by the single justice are:

"1. Does the Chief Administrative Justice of the Trial Court of the Commonwealth have the authority to direct that monies received by the Clerks of the Superior Court Department be consolidated and invested in a centralized bank account to be administered by the Treasurer and Receiver General of the Commonwealth?

"2. Is the implementation of the centralized bank account system by the Chief Administrative Justice of the Trial Court with the cooperation of the Treasurer and Receiver General an unwarranted interference by the executive branch with the judicial branch so as to violate art. 30 of the Massachusetts Constitution?

"3. Does the implementation of the centralized bank account system contravene the requirements of General Laws chapter 35, sections 22, 22A and 23, and of Superior Court Rule 22 and/or interfere with the Plaintiffs' duties or authority as elected officials?

"4. May the Attorney General decline to represent the Plaintiffs Clerks of Court in this action?

"a. In the absence of appointment of counsel by the Attorney General, may the Court appoint counsel for the Plaintiffs and order the payment of reasonable attorneys' fees thereto from public funds?

"b. In the absence of such an appointment by the Attorney General and/or by the Court, may the Plaintiffs nevertheless retain independent counsel to prosecute this action and may that counsel be paid out of public funds?"

We summarize the facts contained in the statement of agreed facts. This action concerns a cooperative plan by the Chief Administrative Justice and the Treasurer whereby all monies received by the judicial branch of the Commonwealth will be consolidated in a central bank account containing various subsidiary suspense accounts into which monies received by the judicial officers of the Commonwealth will be deposited. The proposed system is to be implemented in every department of the Trial Court. As of the date when the agreed statement was entered, it had been implemented in 70% of the Trial Court, as follows: 81% of the divisions of the District Court, 65% of the divisions of the Probate and Family Court, 75% of the divisions of the Juvenile Court, one of the two divisions of the Housing Court, and the Superior Court in one county. As a result, $4.9 million has been invested in the centralized bank account at an interest rate greater than 16%.

Under this system, court officials make daily deposits of funds received to local bank accounts. These funds are then transferred electronically to a central bank account established by the Treasurer, who has established and maintains an accounting system with the capabilities of segregating and recording the various receipts according to their origin. Each subsidiary account remains in the name of the clerk or other court official who will continue to have access to and control over the monies held. Under the proposed system, the Treasurer cannot withdraw money from an account without the authorization of the official in whose name the account is established, nor can he refuse to release funds as directed by the appropriate judicial officer, who is able to draw on the funds standing in his name. Withdrawal of the funds can be accomplished only upon the order of the court official in whose name monies have been deposited. Ownership of the funds is not transferred until payment is required under the governing statute or by order of the court.

The consolidated amounts accrue to the benefit of the Commonwealth, the appropriate county, or the party litigant, as provided by statute. Under the centralized bank account system, amounts of interest due at prevailing market rates on any particular account to persons or entities other than the Commonwealth or a county can be calculated on a daily basis. The primary advantages of the system, however, are the ability to invest monies received by the judicial branch at higher interest rates than those previously being earned and an increased ability to account for monies collected and processed through the judicial branch.

Thereafter, on August 18, 1981, after the plaintiffs' request for preliminary injunctive relief was denied, the Chief Administrative Justice, acting through his representatives, under the authority granted him by G. L. c. 211B, attempted to implement the centralized bank account system in the Superior Court for the county of Middlesex.

When the plaintiffs declined to join in this plan, the implementation of the system was deferred pending attempts to resolve the controversy among the parties. Pending the outcome of this litigation, the parties entered into a stipulation which enabled the Chief Administrative Justice to commence the implementation of the centralized bank account system in the Superior Court on a limited basis.

1. The plaintiffs argue that the powers of the Chief Administrative Justice are established in G. L. c. 211B, and that that statute gives him no power to institute the centralized bank account system. We disagree with the latter premise.

It is true that the specific powers and duties of the Chief Administrative Justice, as set forth in G. L. c. 211B, § 9, make no reference to the management of the accounts here in issue. Nevertheless, we should read the statute "'according to the intent of the Legislature ascertained from all its words construed by the ordinary and approved usage of the language, considered in connection with the cause of its enactment, the mischief or imperfection to be remedied and the main object to be accomplished, to the end that the

purpose of its framers may be effectuated.'" *Registrar of Motor Vehicles* v. *Board of Appeal on Motor Vehicle Liab. Policies & Bonds*, 382 Mass. 580, 585 (1981), quoting from *Board of Educ.* v. *Assessor of Worcester*, 368 Mass. 511, 513 (1975). Moreover, it is axiomatic that the Chief Administrative Justice possesses not only that authority specifically granted to him by statute, but also the authority to employ all ordinary means reasonably necessary for the full exercise of the powers granted to him and the duties imposed upon him. *Town Taxi, Inc.* v. *Police Comm'r of Boston*, 377 Mass. 576, 586 (1979). *Bureau of Old Age Assistance of Natick* v. *Commissioner of Pub. Welfare*, 326 Mass. 121, 124 (1950). Exercise by the Chief Administrative Justice of this money management function, formerly exercised by the clerks, is consistent with the role of the clerks as being basically ministerial officers and subject to the direction of the courts (within constitutional and statutory limits) in the performance of their duties. *Boston* v. *Santosuosso*, 308 Mass. 202, 206 (1941). *Patrick* v. *Dunbar*, 294 Mass. 101, 104 (1936). *Cambridge Sav. Bank* v. *Clerk of Courts for County of Hampden*, 243 Mass. 424, 427 (1923).

A major feature of G. L. c. 211B, a part of the Court Reorganization Act, is the consolidation of resources into a unified trial court under the managment of the Chief Administrative Justice. See *Bruno* v. *Chief Administrative Justice of the Trial Court*, 380 Mass. 128, 130 (1980). The express legislative purpose of the enactment was "to promote the orderly and effective administration of the judicial system of the commonwealth. To that end the provisions of this act provide for an administrative consolidation of the several courts of trial jurisdiction." St. 1978, c. 478, § 1. The thrust of the statute is toward consolidation, not separation; toward conformity, not diversity. It is clear that the centralized bank account system will result in a uniform investment policy, at favorable rates, of monies received by the courts, to the benefit of the public. Implicit in the broad powers granted by the Legislature to the Chief Administrative Justice to act, with respect to matters within the judi-

cial branch, is the authority to direct that the centralized bank account system be implemented within the Trial Court.

2. The plaintiffs contend that certain statutes (G. L. c. 35, §§ 22, 23),[1] as well as a rule of the Superior Court (rule 22),[2] are inconsistent with, and contradict, any impli-

---

[1] The statutes, as amended, are as follows, in their entirety: G. L. c. 35, § 22: "Except as otherwise provided, county treasurers, clerks of the courts, clerks of district courts, sheriffs and superintendents of jails and houses of correction, probation officers, registers of probate and insolvency and registers of deeds, having more money in their hands than is required for immediate use, shall deposit it, in their official names, in national banks or trust companies in the commonwealth or banking companies doing business in the commonwealth and qualified to receive demand deposits under the provisions of section six A of chapter one hundred and seventy-two A, at the best practicable interest rates. County treasurers may also deposit in time deposits in such national banks, trust companies or banking companies and invest in United States treasury bills. Interest thereon shall be paid to the county, except that *interest accruing to deposits by* registers of probate and *clerks of courts shall be paid to the commonwealth*; provided, that interest accruing on the deposit as aforesaid of any money paid to any official mentioned in this section which is so paid under order of a court or which is otherwise subject to the direction of a court shall, if the court so directs, be paid to the parties entitled to the principal fund of such deposit" (emphasis supplied).

G. L. c. 35, § 23: "Money paid into the courts in any county shall, if possible, be placed at interest by the clerks thereof, and the interest shall be available for the uses of the commonwealth unless the court directs it to be paid to the parties to the litigation in connection with which such money was paid into court. All interest in the custody of any clerk of said courts not directed to be paid as aforesaid, remaining after payment by order of the court of the principal fund to parties litigant entitled thereto, shall annually be paid to the state treasurer between the first and tenth days of each fiscal year, to be used for the general purposes of the commonwealth."

[2] Rule 22 of the Superior Court (1974) (which is merely repetitious of the requirements of G. L. c. 35, § 23, *supra*) reads as follows: "Money paid into court shall be in the custody of the clerk, whose duty it shall be to receive it when paid under the authority of law or rule or order of the court. Any deposit of money in excess of five hundred dollars ($500.) paid into court shall be deposited in an interest bearing bank account. He shall pay it as directed by the court; but money paid into court upon tender or otherwise for the present and unconditional use of a party, shall be paid, on request, without special order, with any interest which has accrued thereon, to such party, at whose risk it shall be from the time when it is paid into court. Money payable to a party may be paid to his attorney of record, if authorized by the court."

cation of authority in the Chief Administrative Justice. We disagree.

The plaintiffs argue that the proposed central account will violate the provisions of the statutes and rule 22 that the clerks shall have "custody" of funds; that funds be deposited in a "bank account"; be properly segregated; be subject to withdrawal on "demand"; and in certain cases be suscepti-ble to management under special orders of a court.

On the contrary, we conclude that these statutory provi-sions do not contain any prohibition against the consolida-tion and investment of funds in a centralized bank account system which contains subsidiary accounts in the name of the clerk, over which the clerk has custody and control, and which maintains an accounting system capable of segregat-ing and recording each receipt according to its origin. We agree with the argument of the Attorney General that the centralized account system will ensure that funds received by the courts are held and invested as required by G. L. c. 35, §§ 22, 23, and that the appreciably greater yield from the centralized account system is a means by which the plain-tiffs may comply with the statutory requirement that monies be deposited into funds "at the best practicable interest rates." G. L. c. 35, § 22.[3]

We find no merit in the contention of the clerks of court that the proposed system will violate conditions of the bond given by each of them pursuant to G. L. c. 221, § 12, "con-ditioned to perform faithfully his official duties."

3. We further conclude that the implementation of the centralized bank account system by the Chief Administrative Justice of the Trial Court, with the cooperation of the Treas-

---

[3] The Attorney General demonstrates the substantial potential monetary benefits of the proposed system to the treasury of the Commonwealth, and to interested parties, by the following impressive information selected from the statement of agreed facts: "It is estimated that there is in excess of $20. million being held at any given time by all the Courts of the Common-wealth"; since implementation of the centralized bank account system, the interest earned on the consolidated funds has ranged from 14.91% to 17.75%. This is to be contrasted with the 5.5% interest earned on these funds when deposited by the Clerks in local accounts.

urer, is not an unwarranted interference with the judicial branch of government by the executive branch and does not violate art. 30 of the Declaration of Rights of the Massachusetts Constitution, which provides: "In the government of this commonwealth, the legislative department shall never exercise the executive and judicial powers or either of them: the executive shall never exercise the legislative and judicial powers, or either of them: the judicial shall never exercise the legislative and executive powers, or either of them: to the end it may be a government of laws and not of men."

While the principle of separation of powers is thus deeply entrenched within this Commonwealth, an absolute division between the three governmental departments is "neither possible nor always desirable." *Opinion of the Justices,* 365 Mass. 639, 641 (1974). The Justices have said that two important considerations in determining whether art. 30 has been violated are whether the coordinated function between the two branches is voluntary and whether one branch is thereby intruding in the internal function of another. *Id.* at 647.

As to the voluntary nature of the proposed system, the Attorney General concedes, we think correctly, that the constitutional issue here would be a more difficult one to face if it were mandated that monies paid into the court would be deposited to a central account managed by the Treasurer. However, there is no such mandate here. The proposed system is a cooperative venture between the Chief Administrative Justice and the Treasurer.

Neither is the role of the Treasurer here intrusive upon the functioning of the judicial branch. The Treasurer here acts in a "strictly service capacity" (*id.* at 645) for the judicial branch. Although it can be said that the Treasurer is acting as an agent for the judiciary, "[t]here is nothing inherently repugnant to the concept of separation of powers that agents of one branch also act as agents of the other." *Commonwealth* v. *Favulli,* 352 Mass. 95, 101 (1967). The Treasurer can at no point withdraw money from an account without the authorization of the official in whose name the

account was established, nor can he refuse to release funds as directed by the appropriate judicial officer. Under the proposed centralized bank account system, therefore, the clerks, or other judicial officers to whom monies are paid, retain control over the funds deposited. The Treasurer merely acts in a service capacity as administrator of the funds, with the knowledge and assistance of the Chief Administrative Justice. No rights of third parties are affected or even involved.

Since the participation of each branch is voluntary, and since there is no danger of interference by either branch with the internal functioning of the other, the establishment of the proposed system is constitutionally permissible. Compare *Brach* v. *Chief Justice of the Dist. Court Dept., post* 528 (1982).

4. The plaintiffs contend that attorneys representing them in this action should be compensated at public expense. The Attorney General does not dispute this premise, and we agree with it.

Clearly, the plaintiffs are State officials, as shown by the application of several relevant statutes. G. L. c. 221, §§ 12, 14, 94. G. L. c. 29A, § 1. G. L. c. 211B, § 9. G. L. c. 35, §§ 22, 23. The Attorney General alone has control over the conduct of litigation involving the Commonwealth, its agencies, and officers. G. L. c. 12, § 3. *Secretary of Administration and Fin.* v. *Attorney Gen.*, 367 Mass. 154, 159 (1975). However, there is an element of discretion in his function, since he may decline to pursue litigation which in his opinion will not further the interests of the Commonwealth and the public. *Id.* at 163. The Attorney General states in this case that, in his discretion, he decided that the cause of the plaintiffs was not a proper one for him to pursue. Accordingly, it is appropriate for this court to appoint some suitable counsel to represent the plaintiffs in this action. We conclude that the single justice should enter an order, retroactive in effect, which appoints counsel to represent the plaintiffs, and provides compensation for their counsel at public expense.

5. Our answers to the reported questions (shown *supra*) are: No. 1, "Yes"; No. 2, "No"; No. 3, "No"; No. 4, "Yes"; No. 4a, "Yes"; No. 4b, No answer required.

The case is remanded to the Supreme Judicial Court for the county of Suffolk for further proceedings consistent with this opinion.

*So ordered.*