# United States Court of Appeals

## For the First Circuit

Nos. 01-1581, 01-2429

STATE POLICE FOR AUTOMATIC RETIREMENT ASSOCIATION, ET AL.,

Plaintiffs, Appellants,

v.

JOHN DIFAVA, SUPERINTENDENT OF THE DEPARTMENT OF
STATE POLICE, ET AL.,

Defendants, Appellees,

ROBERT T. DEVEREAUX, ET AL.,

Intervenors, Appellees,

EQUAL EMPLOYMENT OPPORTUNITY COMMISSION,

Intervenors, Appellees.

APPEAL FROM THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF MASSACHUSETTS

[Hon. Patti B. Saris, <u>U.S. District Judge</u>]

Before

Torruella, <u>Circuit Judge</u>,

Campbell and Cyr, <u>Senior Circuit Judges</u>.

<u>Michael C. McLaughlin</u> with whom <u>Law Offices of Michael C.</u>

McLaughlin was on brief for appellants.

Paul D. Ramshaw, Attorney, with whom Nicholas M. Inzeo, Acting Deputy General Counsel, Philip B. Sklover, Associate General Counsel, Vincent J. Blackwood, Assistant General Counsel, were on brief for intervenor-appellee, Equal Employment Opportunity Commission.

James B. Conroy with whom Jeffrey L. Levy and Donnelly, Conroy & Gelhaar, LLP were on brief for intervenors-appellees, Captain Robert T. Devereaux, et al.

Deborah S. Steenland, Assistant Attorney General, with whom Thomas F. Reilly, Attorney General, and Thomas A. Barnico, Assistant Attorney General, were on brief for defendants-appellees, John DiFava, Superintendent of the Department of State Police, et al.

January 17, 2003

**CAMPBELL**, <u>**Senior Circuit Judge**</u>.  This appeal concerns a collateral attack on an injunction, preliminarily issued by the district court in 1992 and, with modifications, made permanent in 1998.  The effect of the injunction is to prevent the Commonwealth of Massachusetts ("Commonwealth") from enforcing a state law that requires members of its reconstituted state police force to retire upon reaching the age of 55.  Appellant, State Police for Automatic Retirement Association ("SPARA"), contends that the challenged permanent injunction has injured its members by diminishing their promotional opportunities.  According to SPARA, the injunction violates the Supreme Court's decision in <u>Kimel</u> v. <u>Florida Board of Regents</u>, 528 U.S. 62 (2000), and was also overly broad and erroneous when issued.  Appellant appeals from the district court's refusal to enjoin the Commonwealth from complying with the allegedly faulty injunction and also from the court's dismissal of SPARA's complaint against three state officials ("State Officials")[1] for their failure to enforce the mandatory state police retirement age of 55.  In separate orders, the district court denied SPARA's request for a preliminary injunction and granted the defendant-appellees' motion to dismiss.  The court

---

[1]SPARA brought suit against John DiFava, Superintendent of the Department of State Police; Ellen Philbin, Executive Director of the Massachusetts State Police Retirement Board; and Jane Perlov, Secretary of Public Safety in their individual capacities.

ruled that SPARA's action was barred by the doctrine of res judicata and, in the alternative, by stare decisis. We affirm, albeit on somewhat different grounds.

## I. Background

The focus of this action is a Massachusetts law, enacted in 1991 as part of the reorganization of the Massachusetts State Police, that mandated the automatic retirement of all members of the reconstituted police force at age 55. Pursuant to Chapter 412 of the Massachusetts Acts of 1991, the Metropolitan District Commission Police ("MDC Police"), the Registry of Motor Vehicles Law Enforcement Division ("Registry Police"), and the Capitol Police were merged with the Division of State Police. Section 122 of Chapter 412, codified at Mass. Gen. Laws ch. 32, § 6(3)(a) (1992), required all members of the newly consolidated State Police Department to retire at age 55. Prior to the consolidation, the MDC Police, the Registry Police, and the Capitol Police had been required by Massachusetts law to retire at age 65. In contrast, the original State Police Division officers had been mandated by law to retire at age 50. Thus, § 6(3)(a) added five years to the mandatory retirement age of officers formerly in the original state police division, but subtracted ten years from the forced retirement age of officers formerly belonging to the MDC Police, Registry Police, and Capitol Police.

Facing mandatory retirement ten years earlier than anticipated, forty-five officers of the former MDC Police, Capitol Police, and Registry Police brought an action in the district court in December 1992, (the "Gately action"), seeking to invalidate the mandatory retirement provision contained in § 6(3)(a) as being violative of the federal Age Discrimination in Employment Act ("ADEA"), 29 U.S.C. § 621 et seq. (1999 & Supp. II).[2] The district court entered a preliminary injunction enjoining the Commonwealth from enforcing the mandatory retirement provision of the new law. The preliminary injunction provided that the Commonwealth was "temporarily restrained and enjoined from dismissing or retiring plaintiffs or other officers because they are aged 55 or older." Gately v. Massachusetts, 92-CV-13018-MA (D. Mass. Dec. 30, 1992) (order granting preliminary injunction). The Commonwealth appealed from the preliminary injunction. This court affirmed the injunction, rejecting, inter alia, the Commonwealth's contention that the ADEA's safe-harbor provision allowed the Commonwealth to apply to the plaintiffs the mandatory state police retirement age

---

[2]The ADEA prohibits an employer from "failing to hire or to discharge any individual or otherwise discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment because of such individual's age . . . ." 29 U.S.C. § 623(a).

found in § 6(3)(a).[3]  <u>Gately</u> v. <u>Massachusetts</u>, 2 F.3d 1221, 1229 (1st Cir. 1993), <u>cert. denied</u>, 511 U.S. 1082 (1994).

Following the denial of its appeal, the Commonwealth moved the district court to amend the preliminary injunction "on the grounds that the current order enjoins the defendants from retiring the member[s] of the state police at any age."  The Commonwealth requested the following order:  "that the defendants . . . are temporarily restrained and enjoined from dismissing or retiring plaintiffs or other officers because they are between the ages of 55-64."  The plaintiffs opposed the motion.  On November

---

[3]The safe-harbor provision of the ADEA, 28 U.S.C. § 623(j), creates an exemption that gives state and local officials the option to lawfully retire law enforcement officials who have attained the age of retirement in effect under applicable state or local law on March 3, 1983, or pursuant to a state law enacted after September 30, 1996, that is not a subterfuge to evade the purposes of the ADEA.  <u>See</u> <u>Gately</u> v. <u>Massachusetts</u>, 2 F.3d 1221, 1228-29 (1st Cir. 1993), <u>cert. denied</u>, 511 U.S. 1082 (1994) (referring to the 1986 amendment); <u>Gately</u> v. <u>Massachusetts</u>, No. 92-13018-MA, 1998 WL 518179, at *7 n.5 (D. Mass. June 8, 1998) (discussing the applicability of the safe-harbor provision to § 6(3)(a)).  The history of the safe-harbor provision is complex.  In 1986, Congress amended the ADEA to create a time-limited exemption that allowed states to make hiring and discharge decisions of law enforcement personnel pursuant to applicable state or local law in effect on March 3, 1983 -- the day after issuance of the Supreme Court's decision in <u>EEOC</u> v. <u>Wyoming</u>, 460 U.S. 226, 239 (1983), holding that the ADEA validly applied to state and local governments.  The exemption, designed to provide states an opportunity to adjust to the Supreme Court's decision, expired on December 31, 1993.  On that date the ADEA's strictures against age discrimination would thus become fully applicable to state and local employment decisions related to law enforcement officers. However, on September 30, 1996, Congress again amended the ADEA so as to reinstate the safe-harbor provision, with some revisions. The amendments were made retroactive to December 31, 1993.

24, 1993, in a margin note, the district court allowed the defendant's motion and enjoined the Commonwealth from retiring state police officers because they were 64 or younger.

On September 23, 1996, the plaintiffs filed an emergency motion to amend the preliminary injunction. The plaintiffs requested that the original preliminary injunction be reinstated to "allow the few plaintiffs who are likely to attain the age of 65 before this case is resolved to avoid sustaining the very harm the ADEA and proposed legislation is designed to prevent." The Commonwealth opposed the new amendment arguing that the current injunction was consistent with the settled expectations of the parties because prior to the consolidation of the four divisions "no officer had the expectation of remaining employed beyond age 65."

The district court granted the plaintiffs' motion noting:

> This issue raises an important but difficult policy question. However, I am persuaded that the state law, fairness to the two police officers, and the limited immediate impact which will result, provide grounds upon which to grant the motion. With respect to these two officers and others currently on the force who might become similarly situated, therefore, the plaintiffs' motion to amend the preliminary injunction is GRANTED.

Gately v. Massachusetts, No. 92-13018 (D. Mass. Sept. 26, 1996) (order amending preliminary injunction).

Between 1993 and 1996, the court case lay dormant as the parties attempted to negotiate a settlement which was to include a

-7-

legislative solution. Proffered state legislation would have permitted state police officers to remain employed past the mandatory retirement age of 55 if they could pass a physical exam. This legislation was suggested in the aftermath of the "Landry Report," a 3,000 page report, authorized by Congress, concluding that no age less than 70 would serve as a bona fide occupational qualification ("BFOQ") for law enforcement work.

Neither a legislative solution nor any settlement occurred, however, and the plaintiffs, by then including the Equal Employment Opportunity Commission ("EEOC"), which had since intervened, moved for summary judgment. The plaintiffs argued that the Commonwealth could not establish that the mandatory retirement age of 55 in § 6(3)(a) was a BFOQ as required by the ADEA and, as a result, the law violated the ADEA. On June 8, 1998, the district court granted summary judgment in favor of the plaintiffs and the intervenor-plaintiff, the EEOC. The court ruled that § 6(3)(a), which established a mandatory retirement age of 55 for officers of the State Police, was superseded and preempted by the ADEA, 29 U.S.C. § 623(a)(1). The court ordered that the Commonwealth was "permanently enjoined from requiring officers of the Department of the State Police to retire solely on the basis of their age." The Commonwealth did not appeal.

In August 2000, Gerald A. Colletta, III, a State Police Lieutenant and a member of SPARA, attempted to intervene in the

Gately action and seek relief from the judgment pursuant to Fed. R. Civ. P. 60(b)(5), in light of the Supreme Court's ruling in Kimel v. Florida Board of Regents, 528 U.S. 62 (2000). The district court denied the motion to intervene as untimely. Colletta did not appeal from the denial of his motion.

In January 2001, SPARA, and a long list of named individuals, initiated an action of their own in the district court. SPARA, and named plaintiffs, contended that they were being injured by the continued enforcement of an invalid and overly broad Gately injunction. The plaintiffs asserted that the existing injunction was "directly responsible for members of SPARA being denied promotions." The basis of SPARA's initial complaint and the first amended complaint was that the permanent injunction was invalid in light of Kimel. The district court permitted the EEOC and certain state police officers, aged 50 or older, to intervene.

SPARA moved for a preliminary injunction based on reading Kimel to stand for the proposition that the ADEA no longer applied to the States. The district court denied the motion. State Police for Automatic Ret. Ass'n v. DiFava, 138 F. Supp. 2d 142 (D. Mass. 2001). SPARA, with the district court's permission, amended its complaint two more times to include claims that the injunction in Gately was invalid because (1) the district court in the Gately action misconstrued the applicability of the safe-harbor provision in the ADEA for mandatory retirement plans for state law

enforcement officers, 29 U.S.C. § 623(j); (2) the blanket prohibition against requiring the retirement of any state police officer at age 55 or older had created a de facto class action in violation of Federal Rule of Civil Procedure 23; and (3) the injunction impermissibly lacked a termination date. SPARA also appeared to argue that the State Officials were applying the injunction incorrectly in direct contravention of this court's decision in Gately, 2 F.3d at 1221.

The State Officials and the intervenors filed a motion to dismiss the Third Amended Complaint. The district court allowed the motion, concluding that SPARA's action was barred by the doctrine of res judicata. State Police for Automatic Ret. Ass'n v. DiFava, 164 F. Supp. 2d 141, 155 (D. Mass. 2001). The court determined that there had been (1) a final judgement in the Gately action; (2) that the present action derived from the same set of operative facts; and (3) that the Commonwealth had ably represented the interests of SPARA in the Gately action. In the alternative, the district court ruled that, given this court's decision affirming the preliminary injunction, stare decisis precluded it from reviewing or altering the permanent injunction. The district court also dismissed SPARA's claims that the lack of a termination date invalidated the permanent injunction and denied SPARA's attempt to sue under Federal Rule of Civil Procedure 23, noting that the rules did not create federal substantive rights.

-10-

This appeal followed.

## II.        Discussion

On appeal, SPARA does not pursue all the points raised below.  SPARA does not challenge the district court's decisions (1) that stare decisis precluded it from reviewing and altering the permanent injunction; (2) that SPARA was without a cause of action under Federal Rule of Civil Procedure 23 (Count II); and (3) that SPARA did not properly allege constitutional equal protection claims based on animus under 42 U.S.C. §§ 1985 and 1986 (Counts V and VI).

Our discussion is limited to the issues SPARA now argues on appeal.  First, SPARA claims that the district court erred when it concluded that, after the Supreme Court's decision in Kimel, the ADEA remains applicable to the states.  Second, SPARA argues that the doctrine of res judicata does not bar it from attacking the permanent injunction issued in Gately.  Third, SPARA attacks generally the breadth of the permanent injunction, claiming that the district court in the original Gately action exceeded its power when it enjoined the state from retiring state police officers subject to age 50 retirement prior to the merger.

## A.        Whether the ADEA Remains Applicable to the States

SPARA contends that the Supreme Court's decision in Kimel renders the ADEA inapplicable to the states in the present situation.  Under this view, the continuing permanent injunction

-11-

issued in the Gately action, enforcing the ADEA in such a way as to nullify the state's mandatory age 55 retirement law, is an illegal and invalid exercise of federal judicial power, leaving the Commonwealth's statute requiring the age-based retirement of state police officers in full force.

This reading of Kimel is erroneous. The Kimel Court reiterated the Supreme Court's earlier holding in Wyoming, 460 U.S. 226 (1983), that the ADEA constitutes a valid exercise of Congress's power under Article I, § 8, cl. 3 "'[t]o regulate Commerce . . . among the several States.'" Kimel, 528 U.S. at 78 (quoting Wyoming, 460 U.S. at 243). Moreover, nothing was said in Kimel to question Wyoming's determination that Congress had extended the ADEA to cover state and local governments and their employees in addition to private firms and individuals. Nor did Kimel alter Wyoming's holding that the ADEA's regulation of state and local government workers did not violate the Tenth Amendment or other provisions of the Constitution. Wyoming, 460 U.S. at 232-243. All that Kimel held was that -- although the ADEA remained a valid exercise of Congress's power under the Commerce Clause -- this fact alone did not, and could not, enable Congress to override a state's Eleventh Amendment immunity against suit. 528 U.S. at 91. Hence Kimel did not declare the standards of the ADEA invalid nor inapplicable as they pertained to the states, but simply endorsed the rights of states and political subdivisions to enforce

-12-

against ADEA lawsuits the immunity conferred by the Eleventh Amendment.

The Eleventh Amendment, however, does not confer upon the states a total immunity against suit. <u>Alden</u> v. <u>Maine</u>, 527 U.S. 706, 755 (1999). <u>Kimel</u> involved a private action for monetary damages. Neither <u>Kimel</u>, nor Eleventh Amendment jurisprudence, prevents individuals, such as the <u>Gately</u> plaintiffs, from obtaining injunctive relief against a state based upon the ADEA pursuant to <u>Ex parte Young</u>, 209 U.S. 123 (1908). <u>See</u> <u>Bd. of Trs. of the Univ. of Ala.</u> v. <u>Garrett</u>, 531 U.S. 356, 374 n.9 (2001) (private individuals may sue for injunctive relief to enforce the standards of the ADA under <u>Ex parte Young</u>); <u>Laro</u> v. <u>New Hampshire</u>, 259 F.3d 1, 17 (1st Cir. 2001).

Indeed, the United States itself may enforce the standards of the ADEA against states both in actions for money damages and for injunctive relief. <u>See</u> <u>Garrett</u>, 531 U.S. at 374 n.9; <u>Alden</u>, 527 U.S. at 755; <u>Laro</u>, 259 F.3d at 17. The EEOC, an agency of the United States, was a party to the suit that resulted in the issuance of the permanent injunction that SPARA now seeks to invalidate. In <u>Alden</u> the Court stated that "[i]n ratifying the constitution, the States consented to suits brought by other States or by the Federal Government." 527 U.S. at 755. Thus, even though private individuals are precluded by the Eleventh Amendment from suing the Commonwealth for money damages for violations of the

-13-

ADEA, the provisions of the ADEA remain fully applicable and may be enforced against the Commonwealth in the manner described.  Kimel has not so altered the legal landscape as to invalidate the permanent injunction issued in Gately.

**B.        Remaining Claims**

Absent its argument that Kimel removed the legal basis for the 1998 permanent injunction, SPARA's complaint is essentially a renewed attack upon the underlying merits of the injunction. SPARA's primary contention is that the mandatory retirement age of 55 found in Mass. Gen. Laws ch. 32, § 6(3)(a), does not violate the ADEA because it is in fact allowed (as to certain officers) by the safe-harbor provision of the ADEA, 29 U.S.C. § 623(j) (2000). SPARA also contends that the State Officials' continued adherence to the injunction violates its members' civil rights.

The district court held that SPARA was barred by res judicata from attempting to litigate this issue. State Police for Automatic Ret. Ass'n, 164 F. Supp. 2d at 155.  While we agree with the district court that SPARA's complaint must be dismissed, and while we do not necessarily reject the district court's res judicata analysis, we affirm on somewhat different grounds. Ticketmaster-New York, Inc. v. Alioto, 26 F.3d 201, 204 (1st Cir. 1994).  We conclude that SPARA's complaint is devoid of merit and lacks any basis on which relief can be granted.  Fed. R. Civ. P. 12(b)(6).

-14-

SPARA contends that the ADEA's safe-harbor provision should be read to save the state's mandatory retirement age of 55 as applied to those officers who were in the former state police division at the time it was merged with the three other police forces. SPARA is apparently arguing that, by failing to apply the state's 55-year mandatory retirement age to former members of the old state police division, the Commonwealth is permitting these officers to stay longer than they should, thereby filling positions into which SPARA's members, or some of them, might otherwise be promoted.

The safe-harbor provision in effect at the time of the Gately action provided:

> [i]t shall not be unlawful for an employer which is a State . . . to discharge any individual because of such individual's age if such action is taken --
> (1) with respect to the employment of an individual . . . as a law enforcement officer and the individual has attained the age of . . . retirement in effect under applicable State or local law on March 3, 1983; and
> (2) pursuant to a bona fide . . . retirement plan that is not subterfuge to evade the purposes of this chapter.

29 U.S.C. § 623(j).

The provision was initially enacted to give states a grace period of seven years during which time certain retirement plans for law enforcement officials would be exempted from the ADEA's reach. Gately, 2 F.3d at 1229. We concluded in Gately

-15-

that, under the exemption, states were free to raise or eliminate pre-March 3, 1983 mandatory retirement ages for law enforcement officials but they could not lower retirement ages below what was in effect on that date. Id. In essence, the retirement age requirements of a plan in effect as of March 3, 1983 became the floor for legally valid plans adopted by a state. Id. (citing 132 Cong. Rec. S16850-02 (daily ed. Oct. 6, 1986)).

SPARA now concedes, as was held in Gately, that the mandatory retirement age contained in § 6(3)(a), as applied to the Gately plaintiffs, was not saved by the safe-harbor provision contained in § 623(j). The Gately plaintiffs consisted of former members of the MDC Police, the Capitol Police, and the Registry Police whose retirement age had been 65. The age-55 statute, adopted in 1991 as part of the consolidation of the four state police forces, impermissibly lowered the retirement age of those plaintiffs. SPARA argues, however, that the age-55 age cap contained in § 6(3)(a), as applied to former troopers in the old state police division, whose retirement age in 1983 was 50, was protected by the exemption contained in § 623(j).

The difficulty with this argument is that the safe-harbor provision merely permits "an employee which is a State" to grandfather pre-March 3, 1983, state retirement standards. It does not require a state to continue to enforce such age-based standards, nor does it empower individual state employees to force

-16-

the state to do so. Having found that the mandatory age-55 retirement law enacted as part of the reorganization of the enlarged State Police Department violated the ADEA with respect to certain of its members, the district court understandably enjoined enforcement of the entire law rather than attempting to narrow it, as SPARA would prefer, so that it would still apply to some officers within the new department although not others. See, e.g., Virginia v. Am. Booksellers Ass'n, 484 U.S. 383, 397 (1988) (stating "we will not rewrite a state law to conform it to constitutional requirements"); Consol. Cigar Corp. v. Reilly, 218 F.3d 30, 56 (1st Cir. 2000) (stating courts must "take care not to trample legislative or executive province of state authorities by making unduly substantive additions or changes to laws and regulations"), rev'd in part on other grounds sub nom., Lorillard Tobacco Co. v. Reilly, 533 U.S. 525 (2001). The Commonwealth, represented in the Gately action by its Attorney General, chose not to appeal from the broadly-worded injunction, accepting the federal court's determination that § 6(3)(a) was, in effect, non-severable, i.e., could not reasonably be applied to the reorganized division in a splintered fashion so as to permit the forced retirement of certain former state troopers while all others would be free from any retirement age limit. Certainly both the district court and the Commonwealth were entitled to doubt that the Massachusetts legislature would have wanted the age-55 retirement law -- that the

legislature had written expressly to apply to the entire new state police department -- to remain in effect only with respect to some officers while others enjoyed the full protections of the ADEA. Cf. Seminole Tribe of Fla. v. Florida, 517 U.S. 44, 75 (1996) (noting that a federal court is not free to rewrite a law "to approximate what we think Congress might have wanted had it known that [the statute] was beyond its authority").  It is notable that the Gately court afforded the parties time to return to the Massachusetts legislature in hopes of securing legislative redress -- a vain hope, as matters evolved.

In any event, whether to pursue the goal SPARA now seeks and attempt to persuade the federal court to narrow its injunction so as to save the retirement age selectively under the ADEA's safe-harbor provision in the case of certain former state troopers was a decision for the Commonwealth alone to make.[4]  See Clerk of

---

[4]We note that SPARA's members had ample notice of the Gately action.  They could have brought their views to the attention of the Commonwealth's attorney general in a timely fashion, or even sought to persuade the court to allow them to intervene permissively, or, possibly, to file an amicus brief on the point now made.  State police officers were apprised of the developments in the Gately litigation through internal memoranda and press coverage.  The Gately action spanned six years -- from the date of the preliminary injunction issued in 1992 to the date of the nearly identical permanent injunction issued in 1998.  The impact of the injunction on advancement within the department was certainly a matter that could have been anticipated during the six years the preliminary injunction was in place.  The Commonwealth's litigation position -- upholding the mandatory retirement age without differentiating among officers -- was revealed, at the latest, during its appeal from the preliminary injunction in 1992.  Yet, it was not until two years after the final judgment was entered in the

<u>Superior Court</u> v. <u>Treasurer and Receiver Gen.</u>, 437 N.E.2d 158, 163 (Mass. 1982) ("The Attorney General alone has control over the conduct of litigation involving the Commonwealth, its agencies, and officers."). The safe-harbor provision permits states alone to grandfather pre-March 3, 1983 retirement laws. As a narrow exception to ADEA's broad prohibition of mandatory age-based retirement, it allows states, if they choose, to continue to enforce against relevant law enforcement officers certain earlier age-based retirement laws (or to create new laws consistent with the mandates of the statute). The language of § 623(j) is permissive not mandatory. The Commonwealth's and the State Officials' adherence to the permanent injunction in no way violates § 623(j) much less any other provision of the ADEA. Massachusetts fought hard in <u>Gately</u> to uphold the validity of the age-55 retirement law as a whole; but once the <u>Gately</u> plaintiffs prevailed the Commonwealth was entitled to accept, without further appeal, the court's determination that the age-55 law should not stand on a fragmented basis.

Not only are the grandfather rights in § 623(j) expressly accorded to the states alone, but neither § 623(j), nor any other part of the ADEA, makes provision for a private cause of action in the case of individual officers or classes of officers who wish to

<u>Gately</u> action that a SPARA member sought to intervene. When that motion to intervene was denied as untimely, the intervenor did not appeal from the decision.

retain state age-based retirement laws. Section 626(c)(1) of the ADEA allows "any person aggrieved [to] bring a civil action in any court of competent jurisdiction for such legal or equitable relief as will effectuate the purposes of this chapter." The purpose of the ADEA is to eliminate age discrimination in the workplace. McKennon v. Nashville Banner Publ'g Co., 513 U.S. 352 (1995); Lavery v. Marsh, 918 F.2d 1022, 1025 (1st Cir. 1990). SPARA's desire to preempt § 623(j) to its own uses, so as to grandfather a state retirement law that is otherwise in contravention of the ADEA does not advance this purpose. The ADEA has been said not to prevent an employer from treating older persons more generously than others. Schuler v. Polaroid Corp., 848 F.2d 276, 278 (1st Cir. 1988) (Breyer, C.J.). Additionally, it is clear that § 623(j) does not provide for an implied cause of action that would allow private litigants to force states, against their will, to use the protections offered in the safe-harbor provision. See Merrill Lynch, Pierce, Fenner & Smith, Inc. v. Curran, 456 U.S. 353, 375-78 (1982); Cannon v. Univ. of Chicago, 441 U.S. 677, 698-99 (1979); Cort v. Ash, 422 U.S. 66, 78 (1975).

Furthermore, SPARA has failed to explain how the State Officials continued adherence to the terms of the injunction violates any cognizable statutory or constitutional rights of its members. SPARA complains that the State Officials are depriving its members "of promotions to the position of sergeant, lieutenant,

and captain because the order prohibits the implementation of the mandatory retirement age of 55." It is unclear from where SPARA would have us find such a "right to promotion" in this context. SPARA does not allege that any federal or state statute affords them a legal right to receive as many promotions as they would have received if the mandatory retirement policy they favor were in effect. No relevant precedent for such a right in federal or state law has been called to our attention.

SPARA also broadly alleges that the State Officials' adherence to the permanent injunction violates its members' equal protection rights. To establish an equal protection claim, SPARA must allege that its members have "been intentionally treated differently and there is no rational basis for the difference in treatment." Village of Willow Brook v. Olech, 528 U.S. 562, 564 (2000) (per curiam). SPARA has not alleged that similarly situated state police officers are being promoted and its members are not. The premise of SPARA's complaint is that the lack of a mandatory retirement for certain officers is slowing the advancement of all state police officers. SPARA has simply failed to allege the facts necessary to support an equal protection claim. See Fireside Nissan, Inc. v. Fanning, 30 F.3d 206, 219 (1st Cir. 1994).

## C. Conclusion

The judgment of the district court is **affirmed**.