**Lester SLOTNICK, Plaintiff, Appellant,**

v.

**Paul GARFINKLE et al., Defendants, Appellees.**

**Nos. 80–1212, 80–1375.**

United States Court of Appeals,
First Circuit.

Submitted Sept. 12, 1980.
Decided Oct. 14, 1980.

---

2. We do not reach the question whether trustee process is effective against appellees under Maine law.

Lester Slotnick, pro se.

Howard P. Speicher, Boston, Mass., on brief, for Sheriff Eisenstadt, defendant, appellee and Stephen S. Ostrach, Asst. Atty. Gen., Boston, Mass., on brief, for judicial appellees.

Francis X. Bellotti, Atty. Gen., and Michael C. Donahue, Sp. Atty. Gen., Dept. of Corrections, Boston, Mass., on brief for Charles W. Gaughan, defendant, appellee.

Before COFFIN, Chief Judge, CAMPBELL and BOWNES, Circuit Judges.

PER CURIAM.

In a complaint filed February 9, 1977 Lester Slotnick alleged that six attorneys, two state court judges, a state court clerk, a justice of the peace, the superintendent of a state hospital and a county sheriff, acting

in a conspiracy and as individuals, deprived him of his liberty without due process. The complaint was brought under 42 U.S.C. §§ 1983 and 1985(3) (1976).

Much in Slotnick's pleadings is conclusory and contradictory, but his allegations are essentially as follows: Paul Garfinkle, an attorney, on or before April 14, 1976, petitioned a Massachusetts state court to find Slotnick in civil contempt for violation of an order prohibiting Slotnick from slandering Garfinkle. Slotnick was brought to court by a subpoena improperly issued by Justice of the Peace Richard Percoco. The case against Slotnick was handled by Garfinkle's associates, Mark Canter and Philip Weinstein. Three other attorneys, Harold Stavisky, Theodore Alevizos and Burton Pike were potential witnesses but apparently did not testify. All six attorneys knew that the allegations against Slotnick were false. Justice Chmielinski presided over the case and committed Slotnick to a state hospital for examination. His clerk, Thomas McDonough, issued criminal committal papers altered to indicate that Slotnick's commitment was pursuant to a civil action. Deputies of the county sheriff, Thomas Eisenstadt, delivered Slotnick to the hospital, where Charles Gaughan, the hospital superintendent, held him despite being informed by the admitting officer that he should not have been in the institution. On April 22, 1976, Slotnick was being brought to court for further proceedings when a bombing closed the courthouse. Chief Justice McLaughlin ordered Slotnick temporarily returned to the hospital, from which he was ultimately released by court order on April 26, 1976.

The district court disposed of Slotnick's complaint in three steps. On July 7, 1977, it granted the motions of defendants Gaughan, Pike, Chmielinski, McDonough, Garfinkle, Percoco and Canter to dismiss the complaint as to them for failure to state a claim upon which relief may be granted. Fed.R.Civ.P. 12(b)(6). At the same time, the court granted the motions of defendants Stavisky and Alevizos for judgment on the pleadings. Fed.R.Civ.P. 12(c). These latter motions were properly treated as raising the defense asserted by the other defendants under Fed.R.Civ.P. 12(b)(6). *See* Fed.R.Civ.P. 12(h)(1); 5 C. Wright & A. Miller, *Federal Practice and Procedure* § 1367, at 688–89 (1969).

Next, on October 26, 1977, the court granted defendant McLaughlin's motion to dismiss for failure to state a claim upon which relief may be granted. This left only Weinstein and Eisenstadt still before the court.

Prior to ruling upon their Rule 12(c) motions, the court held a hearing on February 4, 1980 for the purpose of allowing Slotnick to supplement orally the allegations of his pro se complaint. At the hearing, the district judge and Slotnick engaged in a lengthy, sometimes wide–ranging discussion of the claim that attorney Weinstein and sheriff Eisenstadt had conspired with other of their former co–defendants to commit Slotnick unlawfully to a state hospital. Even with the benefit of this hearing, however, Slotnick's pleadings were found to be insufficient. The complaint was dismissed as to Weinstein for failure to adequately allege a conspiracy, and as to Eisenstadt for failure to allege that he had acted with malice.

Judgment dismissing the complaint in its entirety was entered on February 4, 1980. On May 12, 1980, Slotnick filed a motion for relief from judgment pursuant to Fed.R. Civ.P. 60(b) and a motion to disqualify the district judge from hearing the Rule 60(b) question. Both motions were denied. Slotnick now appeals from each of the court's actions and his appeals are consolidated here.

■ We turn first to Slotnick's allegations that in violation of sections 1983 and 1985 the defendants conspired to deprive him of federally secured rights. Though we are mindful that pro se complaints are to be read generously, *see McDonald v. Hall,* 610 F.2d 16, 17 (1st Cir. 1979), allegations of conspiracy must nevertheless be supported by material facts, not merely conclusory statements. *Slotnick v. Staviskey,* 560 F.2d 31, 33 (1st Cir. 1977), *cert. denied,* 434 U.S.

1077, 98 S.Ct. 1268, 55 L.Ed.2d 783 (1978). Slotnick's complaint, even if read in conjunction with statements made during the February 4 hearing, neither elaborates nor substantiates its bald claims that certain defendants "conspired" with one another. Slotnick's section 1985 claim was thus properly dismissed, *see Griffin v. Breckenridge*, 403 U.S. 88, 102–03, 91 S.Ct. 1790, 1798, 29 L.Ed.2d 338 (1971). The district court was similarly correct in dismissing those portions of Slotnick's section 1983 claim dependent upon the existence of a conspiracy among the defendants. We are left, therefore, with his allegations of individual action by the defendants in violation of his federally secured rights.

■ Slotnick's section 1983 claims against the six attorneys arise from their participation as counsel, party and potential witnesses in a civil contempt proceeding. However, participation by a private party in litigation, without more, does not constitute state action, *Hill v. McClellan*, 490 F.2d 859, 860 (5th Cir. 1974); *Stevens v. Frick*, 372 F.2d 378, 381 (2d Cir. 1967), a necessary precondition to a section 1983 claim, *Adickes v. S. H. Kress & Co.*, 398 U.S. 144, 150, 90 S.Ct. 1598, 1604, 26 L.Ed.2d 142 (1970).

■ The claims against the state court judges and the justice of the peace relate to various acts done in their official capacities. Except where judges act completely without jurisdiction, they are protected from liability under section 1983 by the well–established doctrine of judicial immunity. *Stump v. Sparkman*, 435 U.S. 349, 355–57, 98 S.Ct. 1099, 1104, 55 L.Ed.2d 331 (1978); *Pierson v. Ray*, 386 U.S. 547, 553–55, 87 S.Ct. 1213, 1217, 18 L.Ed.2d 288 (1967). Justices of the peace share this protection from liability. *Perez v. Borchers*, 567 F.2d 285, 287 (5th Cir.), *cert. denied*, 439 U.S. 831, 99 S.Ct. 109, 58 L.Ed.2d 126 (1978); *Gregory v. Thompson*, 500 F.2d 59, 62 (9th Cir. 1974). Slotnick's complaint at most alleges conduct by the judges and justice of the peace in excess of their jurisdiction,[1] which is not enough to lift the cloak of absolute judicial immunity. *Stump, supra*, 435 U.S. at 356, 98 S.Ct. at 1104.

■ Judicial immunity extends as well to those who carry out the orders of judges. *See, e. g., Williams v. Wood*, 612 F.2d 982, 985 (5th Cir. 1980) (absolute immunity for clerks acting in a non–routine manner under instructions from the judge); *Slotnick v. Staviskey, supra*, 560 F.2d at 32 (court clerk enjoys absolute immunity); *Fowler v. Alexander*, 478 F.2d 694, 696 (4th Cir. 1973) (sheriff and jailer confining plaintiff in execution of a court order absolutely immune). Here, the court clerk who filled out Slotnick's commitment papers and the state hospital superintendent responsible for him during his commitment were in all their actions carrying out the official directives of a judge.

As to Sheriff Eisenstadt, we question the district court's suggestion that where a section 1983 suit challenges the acts of a defendant's subordinates, the complaint must impute "malice" to the defendant. *See Developments in the Law–Section 1983 and Federalism*, 90 Harv.L.Rev. 1133, 1206–09 (1977). We need not, however, address this issue. Like the court clerk and hospital superintendent, Eisenstadt is protected from suit by the immunity of the judges under whose orders he acted.

Because the lower court correctly dismissed Slotnick's complaint,[2] the motion for

---

1. Various counts of the complaint state that the judicial defendants acted "without jurisdiction or authority," but these conclusory allegations must be read in the context of the complaint as a whole, which does not seriously question the jurisdiction of any of the defendants to have initiated the actions which Slotnick challenges.

2. This case is not governed by *Gomez v. Toledo*, —— U.S. ——, 100 S.Ct. 1920, 64 L.Ed.2d 572 (1980), which holds that qualified immunity is an affirmative defense, the existence of which does not provide grounds for dismissal of a section 1983 claim under Fed.R.Civ.P. 12(b)(6). Absolute and qualified immunity operate very differently. "An absolute immunity defeats a suit at the outset, so long as the official's actions were within the scope of the immunity. The fate of an official with qualified immunity depends upon the circumstances and motivations of his actions, as established by the evidence at trial." *Imbler v. Pachtman*, 424

relief from judgment is without merit. We therefore need not reach the issue of the lower court judge's refusal to disqualify himself from hearing that motion.[3]

*Affirmed.*

U.S. 409, 419 n.13, 96 S.Ct. 984, 989, 47 L.Ed.2d 128 (1976).

**3.** Even were we to reach the issue, it is doubtful that the case would be decided differently. The motion was presumably made under 28 U.S.C. § 455 (1976), which does not require recusal "unless some reasonable factual basis to doubt the impartiality or fairness of the tribunal is shown by some kind of probative evidence." *Blizard v. Frechette*, 601 F.2d 1217, 1221 (1st Cir. 1979). An examination of the pleadings, motions and affidavits submitted by Slotnick in the course of this litigation reveals virtually no allegation whose probative value would support an inference of the district judge's partiality.