Dennis J. THOMPSON

v.

Howard SANBORN, et al.

No. C83–14–L.

United States District Court,
D. New Hampshire.

July 22, 1983.

Thomas H. Trunzo, Jr., Lebanon, N.H., for plaintiff.

Jeffrey B. Osburn, Manchester, N.H., Gregory H. Smith, Atty. Gen., Concord, N.H., for defendants.

## ORDER ON MOTION TO DISMISS

LOUGHLIN, District Judge.

This is a civil rights action brought by Dennis Thompson, a resident of the Town of Bethlehem, New Hampshire, against Howard Sanborn, Bethlehem's Chief of Police, Jane Maguire, Bethlehem's Bail Commissioner, and against the Town of Bethlehem itself. Judge Henry Greenlaw, the Judge of Bethlehem Municipal Court, was also a named defendant in this action, but has since been dismissed by virtue of his absolute immunity from suit. Order of the court, dated April 19, 1983.

The facts of this case have been well documented in the previous order, and are reviewed below as the proper disposition of the parties dictates. In essence, the complaint alleges that defendant Sanborn "set up" the plaintiff to be the subject of a small claims action, and that upon plaintiff's default, defendant Sanborn was instrumental in procuring a warrant for the plaintiff's arrest which he proceeded to execute. Defendant Maguire is alleged to have unlawfully posted $100.00 bail for the plaintiff's release for a non-bailable offense. The defendant Town of Bethlehem is said to have supported these actions through the acquiescence of its officials.

The plaintiff brings this suit under Title 42 U.S.C. § 1983, alleging that the actions of the various defendants have abridged his First, Fourth, Fifth, and Fourteenth amendment rights under the United States Constitution.

In addition, the plaintiff alleges that the several defendants conspired in vindictive fashion against him to deprive him of his civil rights, and he therefore seeks relief under Title 42 U.S.C. § 1985.

Finally, there exist certain pendant state claims arising from the actions of the defendants—assault and battery, false arrest, false imprisonment, intentional infliction of emotional distress, malicious prosecution, negligence and gross negligence. Since these state claims are derived from the exact same circumstances as the federal claims, it is clear that the requisite "common nucleus of operative fact exists", and the court shall, except as hereinafter noted, also consider those state claims. *United Mine Workers v. Gibbs*, 383 U.S. 715, 86 S.Ct. 1130, 16 L.Ed.2d 218 (1965).

Insofar as the actions against each defendant raise separate questions of law, each will be considered separately below. There are, however, several preliminary matters common to all parties which must be disposed of initially.

To begin with, the court finds absolutely no basis in the facts of the plaintiff's complaint which would support an action under § 1985. Since § 1985(1) and (2) concern conspiracies to prevent an officer from performing his duty and conspiracies to obstruct justice by intimidation of parties, witnesses, or jurors, respectively; and since neither of these is at all relevant to the substance of the plaintiff's complaint, it must be assumed that the plaintiff wishes to allege a violation of § 1985(3), which, by its words, addresses itself to the deprivation of a person's rights or privileges.

However, some basic research on the scope of § 1985(3) would have disclosed that

The language of § 1985(3) requiring intent to deprive of *equal* protection, or *equal* privileges or immunities, means

that *there must be some racial, or perhaps otherwise class-based, invidiously discriminatory animus behind the conspirators' action.*

*Griffin v. Breckenridge,* 403 U.S. 88, 102, 91 S.Ct. 1790, 1799, 49 L.Ed.2d 338 (1970) (Emphasis supplied)

■ Subsequent circuit court decisions have reiterated the necessity of a racial or class-based discriminatory animus behind a conspiracy to state a cause of action under § 1985(3). *Bailey v. California,* 564 F.2d 849 (9th Cir.1977); *Ledwith v. Douglas,* 568 F.2d 117 (8th Cir.1978); *Jones v. Bales,* 58 F.R.D. 453 (D.C.Ga.1972), aff'd 480 F.2d 805 (5th Cir.1973). The plaintiff has never alleged nor, given the facts as set forth in the complaint, could he allege that the transgressions against him were motivated by either race or class. Lacking such rudimentary elements, the cause of action under § 1985 is dismissed for failure to state a claim upon which relief can be granted.

■ Next, the defendants collectively seek dismissal on the grounds that no violation of the plaintiff's constitutional rights, and consequently no violation of § 1983, occurred. As support for this contention, the defendants rely on *Baker v. McCollan,* 443 U.S. 137, 99 S.Ct. 2689, 61 L.Ed.2d 433 (1978).

The plaintiff in *Baker* brought a § 1983 action against county officials for false imprisonment in violation of the Fourth and Fourteenth Amendments. Although he was arrested pursuant to a valid warrant, the plaintiff alleged that his imprisonment for three days—despite repeated protests of his innocence due to a case of mistaken identity—was a violation of § 1983. Deferring on the question of whether the prison officials' *negligence* in not properly ascertaining the identity of their prisoner was cognizable under § 1983, the court said that the threshold requirement of a constitutional violation was not met. Since the fourteenth amendment "protects only against deprivations of liberty accomplished 'without due process of law' ", Id. at 145, 99 S.Ct. at 2695, the court found the plaintiff's attacks on his jailors to be without merit.

Absent an attack on the validity of the of the warrant, under which he was arrested, respondent's complaint is simply that despite his protests of mistaken identity, he was detained in the Potter County Jail ... Respondent was indeed deprived of his liberty for a period of days, but it was pursuant to a warrant conforming, for purposes of our decision, to the requirements of the Fourth Amendment.

Id. at 143–44, 99 S.Ct. at 2694. The court went on to state that the plaintiff's brief pretrial confinement required only a reliable determination of probable cause. Id. at 143, 99 S.Ct. at 2694.

Notwithstanding the defendants' rather liberal interpretation of *Baker* that "an innocent person has no right not to be arrested", Defendants' Memorandum of Law, June 6, 1983, p. 3, *Baker* is clearly distinguishable from the present case. In *Baker,* the mere fact of confinement was the gravamen of the complaint. Here there is more; for, not only does the plaintiff allege violations of his First and Fifth Amendment rights—allegations not present in *Baker* and which must be construed favorably here, *Scheuer v. Rhodes,* 416 U.S. 232, 236, 94 S.Ct. 1683, 1686, 40 L.Ed.2d 90 (1973)—but in addition the plaintiff seeks redress for the very means by which his confinement was procured. In a case similar in some respects to the present one, the Seventh Circuit distinguished *Baker.* Since its remarks are particularly apposite, they merit a quote at length:

We do not believe that the kind of behavior by an officer to accomplish an arrest may be excused by the *Baker* holding that the constitution does not require the officer to make an error-free investigation of all claims of innocence. In this case, it is something else. If the officer undertakes to make decisions which are not his to make and then intentionally misleads those who do have the ultimate authority to authorize the arrest, that officer may be found to have deprived the arrestee of his liberty without due process of law.

*Whitley v. Seibel,* 613 F.2d 682, 686 (7th Cir.1980).

Taking the facts as alleged in this case as true, this court too finds "something else". A jury might easily find more than a failure "to make an error-free investigation" on the part of the defendants. There is allegedly a strong current of fabrication and abuse of authority running through the complaint which may indeed pass the threshold requirements of the fourth and fourteenth amendments. Consequently, the defendants' collective motion to dismiss is denied.

## II Defendant Sanborn

From the favorable reading that the court is obligated to give to the complaint, *Scheuer v. Rhodes, supra,* it is apparent that the actions of Defendant Sanborn form the nucleus of the constitutional violations about which the liabilities of the other parties revolve.

Defendant Sanborn is a 30 year veteran of law enforcement, the Chief of Police in Bethlehem, and is alleged to be an influential member of the local community. He has, in fact, allegedly been known to brag that he "runs the Town of Bethlehem". It is also alleged that Defendant Sanborn harbors some animosity toward the plaintiff, as a result of the latter having reported certain improprieties of Defendant Sanborn's to State authorities.

In their essentials, the plaintiff's charges against Defendant Sanborn amount to harassment. Sanborn is said to have precipitated the stop-payment of a $50.00 check issued to the plaintiff, which the plaintiff cashed in one Frederick Aldrich's store. Aldrich then brought a small claims action in Bethlehem Municipal Court—again at the prompting of Defendant Sanborn. Plaintiff was issued notice of the action pursuant to New Hampshire RSA Chapter 503, and was directed to appear in court on October 19, 1982. The notice provided only that default would result in judgment and costs rendered against the plaintiff. There was no notice of a possible arrest, nor could there have been. RSA 503:7.

Due to difficulties with his automobile, the plaintiff was stranded in Concord on the day of the hearing and was unable to attend. Judge Greenlaw thereafter issued a bench warrant for the plaintiff's arrest. Defendant Sanborn is alleged to have been present at the signing of the warrant and is again said to have urged its issuance.

Upon his return to Bethlehem, the following day (October 20, 1982), the plaintiff was observed by Defendant Sanborn and promptly arrested. The plaintiff was taken into custody and, before Defendant Sanborn was able to transport him to Grafton County Jail, the plaintiff's wife posted his bail. The issue of bail and the bail commissioner's involvement in this case is discussed below.

It is plaintiff's contention that Defendant Sanborn has by these actions deprived him of his constitutional rights under the First, Fourth, Fifth and Fourteenth Amendments to the Constitution.

Defendant Sanborn has, in turn, moved to dismiss the claim against him. Defendant Sanborn submits that he was acting pursuant to the *prima facie* valid warrant issued by Judge Greenlaw and is therefore shielded from suit by the same cloak of absolute immunity worn by the Judge. The defendant does not, and indeed cannot, raise the defense of qualified immunity in his motion. "An absolute immunity defeats a suit at the outset . . . The fate of an official with qualified immunity depends upon the circumstances and motivations of his actions, as established by the evidence at trial." *Imbler v. Pachtman,* 424 U.S. 409, 419, 96 S.Ct. 984, 989, n. 13, 47 L.Ed.2d 128 n. 13 (1975). As support for his contention, Defendant Sanborn draws the court's attention to *Slotnick v. Garfinkle,* 632 F.2d 163 (1st Cir.1980) and *Dunn v. Gazzola,* 216 F.2d 709 (1st Cir.1954). In *Slotnick,* a defendant county sheriff delivered the plaintiff to a state hospital pursuant to a judge's order which was allegedly part of a conspiracy to deprive the plaintiff of his constitutional rights. The court found that the sheriff was vicariously protected from suit by the

immunity of the judge under whose orders he acted, 632 F.2d at 166. Similarly, in *Dunn,* two law enforcement officers were sued on the basis of insufficient notice and service, which the plaintiff alleged resulted in an unfair trial. Finding that "[T]he control of the trial was exclusively within the province of the court", the First Circuit affirmed the District Court's holding that, as quasi-judicial officers, the defendants enjoyed the same absolute immunity as the judge would in such a case. 116 F.2d at 710, 711.

By drawing analogies to these cases, Defendant Sanborn mischaracterizes his role in this matter. The facts of this case indicate the existence of far more than simple compliance or acquiescence in the orders of a judge. Defendant Sanborn is accused of acts which exceed the limits of the immunity he seeks. It appears that Defendant Sanborn was himself the motivating force behind the issuance of the arrest warrant and not simply a ministerial actor performing the duties of his office. It is he who allegedly set into motion the sequence of events which resulted in the plaintiff's arrest. Moreover, many of the actions upon which the plaintiff's complaint is founded cannot be said to have been quasi-judicial in character and cannot therefore be clothed with the correlative immunity [for example, the allegation that Defendant Sanborn had the maker of a check stop payment].

■ The immunities of state officials recognized for the purposes of § 1983 are the same as those recognized at common law. *Dennis v. Sparks,* 449 U.S. 24, 101 S.Ct. 183, 66 L.Ed.2d 185 (1980); *Owen v. City of Independence,* 445 U.S. 622, 662, 100 S.Ct. 1398, 1421, 63 L.Ed.2d 673 (1980). In *Dennis v. Sparks*—also a 1983 suit—the Supreme Court found "[n]othing indicating that, historically judicial immunity insulated from damages those private persons who corruptly conspire with the judge." 449 U.S. at 29, 101 S.Ct. at 187. The Supreme Court affirmed the Fifth Circuit Court of Appeals decision allowing a § 1983 action to proceed against the remaining non-official defendants even though the action against the judge had been dismissed on grounds of absolute immunity. While the facts of *Dennis v. Sparks* admittedly differ from those in this case, the principle enunciated in *Dennis v. Sparks* that a co-conspirator cannot hide in a judge's absolute immunity is *a fortiori* true here, where Defendant Sanborn's conduct is uncontestedly under color of state law, and where Defendant Sanborn acted independently from Judge Greenlaw.

■ It is the rule in New Hampshire that "[a]ll judicial officers when acting on subjects within their jurisdiction are exempted from civil prosecution for their acts." *Moore v. Cotton,* 94 N.H. 387, 388, 54 A.2d 167 (1947); *citing Evans v. Foster,* 1 N.H. 374, 377 (1819). Further, this exemption extends to "The acts and conduct of all public officers in the exercise of their judicial authority." 94 N.H. at 388, 54 A.2d 167. It cannot be contended, however, that Defendant Sanborn was in the exercise of his judicial authority when he precipitated a small claims action against the plaintiff or when he prompted the issuance of the warrant. It is clear, therefore, that Defendant Sanborn cannot avail himself of quasi-judicial immunity under either federal or state law, and his motion to dismiss is accordingly denied.

### III   Defendant Maguire

The plaintiff would also impose civil liability upon Defendant Maguire for requiring $100.00 cash bail for an arrest on a default in a small claims hearing. Because New Hampshire RSA 597:1 requires bail only for "persons arrested for a crime", and because Defendant Maguire was allegedly aware of the nature of the plaintiff's arrest, it is said that she knowingly violated the plaintiff's constitutional rights and "wantonly and recklessly" exceeded the scope of her authority under state law.

In her motion to dismiss, Defendant Maguire asserts that she is absolutely immune from suit under § 1983 insofar as she was acting in a quasi-judicial capacity. Unlike the defense of Defendant Sanborn, Defendant Maguire relies upon the position that

she occupies as bail commissioner for her immunity. It is the very function of her office that endows her with quasi-judicial immunity. Defendant Sanborn, in contrast, sought immunity solely on the basis that he acted pursuant to judicial order. As a quasi-judicial officer, the analysis of Defendant Maguire's motion is therefore a different one. *See, e.g. Lockhart v. Hoenstine,* 411 F.2d 455 (3rd Cir.1969).

■ The immunity of judges from suit is well established. *Pierson v. Ray,* 386 U.S. 547, 87 S.Ct. 1213, 18 L.Ed.2d 288 (1966). Absolute judicial immunity is founded upon the principle that "A judicial officer, in exercising the authority vested in him, [should] be free to act upon his own convictions without apprehension of personal consequences to himself." *Bradley v. Fisher,* 13 Wall 335, 347, 355, 20 L.Ed. 646 (1872). Thus, a judicial officer will be deprived of immunity from suit only when acting in "clear absence of all jurisdiction". Id. at 351, 20 L.Ed. 646. This phrase refers to jurisdiction over the subject matter in question, and does not include acts done in error, maliciously, or in excess of authority. Id.

■ Judicial immunity "extends to other officers of government, whose duties are related to the judicial process." *Barr v. Matteo,* 360 U.S. 564, 569, 79 S.Ct. 1335, 1338, 3 L.Ed.2d 1434 (1958). Thus court clerks, *Slotnick v. Garfinkle, supra,* parole board and probation officers, *Sullivan v. Kelleher,* 405 F.2d 486 (1st Cir.1968), court appointed medical examiners, *Burkes v. Callion,* 433 F.2d 318 (9th Cir.1970), court reporters, *Stewart v. Minnick,* 409 F.2d 826 (9th Cir.1969), and others performing quasi-judicial functions have been held absolutely immune from suit.

New Hampshire RSA 597 provides as follows:

597:15 *Appointment* The Superior Court may appoint . . . commissioners authorized to fix and receive bail in criminal cases . . .

597:18 *Powers* On application of a person who is arrested for a bailable offense, at any time before his arraignment therefore, *any commissioner may fix the amount of and receive bail in the same manner as the court might do . . .*

■ Since it is apparent that this statute does indeed confer quasi-judicial powers on Bail Commissioner Maguire, the only question is whether she can be said to have acted so utterly without jurisdiction as to usurp powers that did not properly belong to her, and thereby forfeited the immunity afforded her by virtue of her function. As was previously noted, the phrase "without jurisdiction" is one with a rather narrow meaning. It literally means lacking in authority over the subject matter of the action. *Stump v. Sparkman,* 435 U.S. 349, 356, 98 S.Ct. 1099, 1104, 55 L.Ed.2d 331 (1977). *Bradley v. Fisher, supra.* Without a doubt, Defendant Maguire had authority to fix and receive bail and that is precisely what she did in this instance. That the plaintiff's "offense", being a civil matter, was not a bailable offense is perhaps sufficient to regard Defendant Maguire's actions as grossly erroneous, negligent and far in *excess* of her jurisdiction, but it does not suffice to strip her from her immunity from suit under § 1983.

■ Moreover, "[i]n addition to the recognized immunity enjoyed by judicial and quasi-judicial officers, . . . there exists an equally well-grounded principle that any public official acting pursuant to court directive is also immune from suit." *Lockhart v. Hoenstine,* 411 F.2d at 460. In view of the fact that there is evidence that Defendant Maguire was following what appears to be Judge Greenlaw's instructions in setting bail, see Exhibit B of defendant's motion of March 17, 1983, it would be manifestly unfair to subject Defendant Maguire to suit in a matter over which she had no discretion—quasi-judicial immunity notwithstanding.

Having thus disposed of the Federal claim against Defendant Maguire, the court sees no reason to retain jurisdiction of the state law cause of action against her. *United Mine Workers v. Gibbs, supra* 383 U.S. at 726, 86 S.Ct. 1130, 16 L.Ed.2d 218. *Massachusetts Universalist Convention v. Hil-*

*dreth and Rogers Co.,* 183 F.2d 497, 501 (1st Cir.1980).

Defendant Maguire's motion is thus granted.

## IV  Defendant Town of Bethlehem

The Town of Bethlehem ("Bethlehem") has also been named as a defendant in this suit. The point of departure for § 1983 actions against municipalities is *Monell v. New York Department of Social Services,* 436 U.S. 658, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978), which held that local governmental bodies are persons for purposes of § 1983, and are thus civilly liable for damages or injunctive relief.

Defendant Bethlehem has moved to dismiss the action against it, asserting that the plaintiff's cause of action rests upon the theory of *respondeat superior*—a doctrine which was expressly prohibited by *Monell* as a basis for municipal liability under § 1983. Id. at 691, 98 S.Ct. 2018, ' 56 L.Ed.2d 611.

The plaintiff's complaint alleges that the actions taken by Defendant Sanborn "resulted from and were taken pursuant to a defacto policy of the Town of Bethlehem"; that this de facto policy "has been known to the selectmen and policy-making officers of the Town of Bethlehem for a substantial period of time"; and that the Town has "not taken steps to terminate ... discipline ... supervise ... train" Defendant Sanborn with regard to the alleged unconstitutional practices. Instead, it is alleged, the officials of the Town have "sanctioned" and shown "deliberate indifference" to these practices.

On its face, the complaint clearly alleges more than a simple employer-employee relationship between Bethlehem and Sanborn. There is more here than simple *respondeat superior.* However, the court finds the complaint deficient in other regards.

■ One of the requirements of *Monell* was that a municipality's "official policy" be the "moving force of the constitutional violation." Id. at 694, 98 S.Ct. at 2037. Official policy need not be a codified rule or practice. It can be a custom or usage fol-lowed by the municipality as a matter of course. Id. at 658, 98 S.Ct. at 2018. This is precisely the form of "official policy" that the plaintiff alleges Bethlehem took with respect to Defendant Sanborn. In essence, the plaintiff has asserted that it was the custom of Bethlehem to look the other way when Defendant Sanborn sought to persecute him.

■ Despite the fact that "custom" is a word subject to a certain amount of vagary, it cannot be so misused as to include so singular and isolated an action as the plaintiff has alleged in this case. In *Adickes v. S.H. Kress and Co.,* 398 U.S. 144, 167–168, 90 S.Ct. 1598, 1613–1614, 26 L.Ed.2d 142 (1970), which the court made use of in *Monell,* 436 U.S. at 658, 98 S.Ct. at 2018, "custom" was used in the context of "persistent and wide spread practices" which were "permanent and well-settled". Though the plaintiff has alleged in a conclusory fashion that Defendant Sanborn was acting pursuant to a *de facto* policy of the Town of Bethlehem, there are no factual allegations which would support such a claim. On the contrary, the facts seem to suggest that the actions of the Town, if indeed there were any, related entirely to *this* plaintiff and only to *these* circumstances. Beyond the bare allegations, there is nothing to suggest that Bethlehem systematically or repetitively engaged in or conspired in such conduct. Far from being "persistent and widespread", the practices of Bethlehem with regard to the plaintiff focussed on victimizing him alone. Absent such a larger pattern of conduct on the part of the municipality, visiting liability on Bethlehem for this single occurrence—however reprehensible it may have been—would be tantamount to invoking the doctrine of *respondeat superior.* Acquiescence in Defendant Sanborn's conduct in this isolated incident is not the act of the abstract "person" known as the Town of Bethlehem. That entity owes its existence to the cumulative behavior of its laws and traditions which transcend the discrete actions of its individual officials. Hence, the strict requirement of *Monell* that an official custom be present

before it can be said that the municipality itself has acted.

This court is well aware of the relatively light burden placed upon a complaint in order to survive a motion to dismiss. It is the standard of *Conley v. Gibson,* 355 U.S. 41, 45–46, 78 S.Ct. 99, 101–102, 2 L.Ed.2d 80 (1957) that . . .

> A complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief.

*Harper v. Cserr,* 544 F.2d 1121, 1122 (1st Cir.1976).

However, since the plaintiff's entire action against Bethlehem is predicated on a single incident, there are no set of facts under which Bethlehem can be held liable.

■ Moreover, several well-reasoned opinions exist which lend support to this court's order. Not only are pleadings insufficient which merely allege conclusions without factual support, *Cohen v. Illinois Institute of Technology,* 581 F.2d 658, 663 (7th Cir.1978), cert. denied 439 U.S. 1135, 99 S.Ct. 1058, 59 L.Ed.2d 97 (1979), but in addition it has been held that "*Monell* implicitly requires that if municipal liability is to be premised upon an unarticulated governmental policy, custom or practice, such custom, policy or practice must be evidenced by more than a single wrongful act." *Rivera v. Farrell,* 538 F.Supp. 291 N.D.Illinois; *Giarrusso v. City of Chicago,* 539 F.Supp. 690 (N.D.Illinois 1982). Municipal policy simply cannot be inferred from a single incident of illegality. See generally *Turpin v. Mailet,* 619 F.2d 196 (2d Cir.1980), citing *Smith v. Ambrogio,* 456 F.Supp. 1130, 1136 (D.Conn.1978); *Schramm v. Krischell,* 84 F.R.D. 294 (D.Conn.1979); *Randle v. Gokey,* 469 F.Supp. 452 (N.D.Ohio 1979); Cf. *Garris v. Rowland,* 678 F.2d 1264 (5th Cir. 1982). Defendant Bethlehem's motion to dismiss is granted.