**EQUAL EMPLOYMENT OPPORTUNITY COMMISSION,**
Plaintiff

v.

**COMMONWEALTH OF PUERTO RICO, et al., Defendants.**

**Civil No. 04–2030(SEC).**

United States District Court,
D. Puerto Rico.

Sept. 11, 2006.

Michael J. O'Brien, U.S. Equal Employment Opportunity Commission, New York, NY, for Plaintiff.

Eduardo A. Vera–Ramirez, Eileen Landron–Guardiola, Julio Cesar Alejandro–Serrano, Luis A. Rodriguez–Munoz, Landron & Vera LLP, Guaynabo, PR, for Defendants.

## OPINION AND ORDER

CASELLAS, Senior District Judge.

Pending before the Court is Co-defendants Commonwealth of Puerto Rico's, Puerto Rico Treasury Department's, Puerto Rico Employees Retirement System's, Puerto Rico Judiciary Retirement System's (herein the "Judiciary Retirement System") and Puerto Rico Employee Retirement System Administration's (hereinafter collectively referred to as "Defendants") motion for judgment on the pleadings (Docket # 41)[1]. Plaintiff filed an opposition (Docket # 45) and Defendants replied (Docket # 48). After carefully examining the parties' filings, the case record and the applicable law, Defendants' motion for judgment on the pleadings will be **GRANTED in part and DENIED in part.**

### Factual Background

Plaintiff, the Equal Employment Opportunity Commission ("EEOC"), has initiated suit against Defendants for alleged violations to the Sections 4(a)(1) and 4(i)(1)(A) of the Age Discrimination in Employment Act ("ADEA"), 29 U.S.C. §§ 623(a)(1) and 623(i)(1)(A). The EEOC's claims stem from Puerto Rico law provisions pertaining to the retirement benefits of public em-

---

1. The Complaint in this case was originally filed on September 29, 2004 (Docket # 1). Plaintiff only included as defendants the Commonwealth of Puerto Rico, the Puerto Rico Treasury Department and the Puerto Rico Employees Retirement System. Plaintiff then sought permission to file an Amended Complaint, which was filed on September 29, 2005 (Docket # 23). Therein, Plaintiff added the Employees' Retirement System of the Puerto Rico Electric Power Authority Retirement System ("PREPA"), the Employees' Re-

tirement System of the Government of Puerto Rico, the Puerto Rico Judiciary Retirement System, the University of Puerto Rico Retirement System ("UPR"), and the Puerto Rico System of Annuities and Pensions for Teachers ("TRS"), for a total of eight (8) defendants. However, Partial Judgment dismissing Plaintiff's claims against PREPA, UPR and TRS with prejudice was entered on July 18, 2006 (Docket # 82). Accordingly, the instant motion for judgment on the pleadings was filed by the remaining active defendants.

ployees 55 or older. To summarize: under Puerto Rico Law 447 of May 15, 1951, as amended, 3 P.R. Laws Ann. §§ 761 *et seq.*, state and local government employees age 55 and older could not become members of retirement systems. However, on October 16, 1990, the Older Workers Benefit Protection Act, Pub.L. 101–433, 104 Stat. 978, was enacted. This statute, which became effective on October 16, 1992, amended the ADEA to, *inter alia,* make clear that the prohibitions of the ADEA applied to all benefits of employment, including retirement benefits. This amendment notwithstanding, it was not until December 28, 1995 that the Puerto Rico legislature passed Puerto Rico Law 255, amending Law 447 by permitting state and local government employees age 55 and older to become members of the retirement systems. Even so, however, Law 255 provided that current employees age 55 and older had to pay **both** the employer and employee contributions to the retirement system in order to become members and that former employees could not become members of the retirement system.

The EEOC then avers that given the state of the law in Puerto Rico, during the period from October 16, 1992 until December 28, 1995, Defendants discriminated on the basis of age by refusing to allow employees who entered public service at age 55 or older to become participating members of their retirement systems. The EEOC further contends that after December 28, 1995, when Law 255 allowed for employees 55 or older to become members of the retirement systems, Defendants continued to discriminate on the basis of age by requiring those employees to retroactively pay their employers' share of pension contributions from October 16, 1992 until December 28, 1995 as a condition of receiving credit for service performed before during those years. *See* Docket # 23 at ¶¶ 34–35. Furthermore, the EEOC

claims that Defendants discriminated on the basis of age by refusing membership in their retirement systems to employees who by October 16, 1992 entered public service at age 55 or older but left public service before December 28, 1995, when Law 255 was passed (Docket # 23 ¶ 26).

Per the foregoing, the EEOC seeks, *inter alia,* that the Court enter judgment requiring Defendants to pay denied or lost benefits in an amount to be determined at trial; pay any employer contributions unlawfully paid by employees in an amount to be determined at trial; and make whole all individuals affected by the unlawful practices described above. The EEOC further seeks that the Court order the payment of an equal sum of liquidated damages, and/or prejudgment interest to those individuals affected by Defendants' unlawful employment practices. *See* Docket # 23 at pp. 7–8.

On the other hand, Defendants seek judgment on the pleadings by arguing that the Eleventh Amendment renders them immune from an EEOC suit for money damages. Defendants contend that because a suit by the EEOC against the Puerto Rico retirement systems seeking money damages in favor of affected individuals is essentially a suit by private citizens against a State (or arms thereof), such a relief is barred by the Eleventh Amendment Immunity doctrine. The EEOC disagrees and so do we. Defendants further aver that the EEOC's claims against the Judiciary Retirement System should be dismissed as only state judges are members of such retirement system and state judges are not protected by the ADEA. The EEOC concedes that judges are not covered by the ADEA but requests that the Court allow further discovery in order to ensure that only judges are members of the Judiciary Retirement System. Given the clear state of the law, such

discovery is unnecessary, as such, we agree with Defendants on this one. An explanation on this issue follows our ruling on the Eleventh Amendment defense.

## Standard of Review

Rule 12(c) of the Federal Rules of Civil Procedure provides an avenue for dismissal on the pleadings. A motion under Rule 12(c) may be presented after the conclusion of the pleading stage "but within such time as not to delay the trial." Fed. R.Civ.P. 12(c). In ruling on a motion to dismiss pursuant to Rule 12(c), the Court will apply the same standards for granting relief that it would have employed had the motion been brought under Rule 12(b)(6). *See* 5C Charles Alan Wright & Arthur Miller, *Federal Practice and Procedure*, § 1367 (2003); *see also Slotnick v. Garfinkle*, 632 F.2d 163, 165 (1st Cir.1980).

■ In assessing whether dismissal for failure to state a claim is appropriate, "the trial court, must accept as true the well-pleaded factual allegations of the complaint, draw all reasonable inferences therefrom in the plaintiff's favor, and determine whether the complaint, so read, limns facts sufficient to justify recovery on any cognizable theory." *LaChapelle v. Berkshire Life Ins. Co.*, 142 F.3d 507, 508 (1st Cir.1998) (citations omitted). "[A] complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Conley v. Gibson*, 355 U.S. 41, 45–6, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957), *quoted in Davis v. Monroe County Bd. of Educ.*, 526 U.S. 629, 654, 119 S.Ct. 1661, 143 L.Ed.2d 839 (1999). *See also Correa–Martínez v.Arrillaga-Beléndez*, 903 F.2d 49, 52 (1st Cir. 1990) (dismissal for failure to state a claim is warranted "only if it clearly appears, according to the facts alleged, that the

plaintiff cannot recover on any viable theory.").

## Applicable Law and Analysis

### I. Eleventh Amendment Immunity

■ The Eleventh Amendment to the United States Constitution provides:

The Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State, or by Citizens or Subjects of any Foreign State.

U.S. Const. Am. XI. Although the Eleventh Amendment literally seems to apply only to suits against a State by citizens of another State, the Supreme Court has extended the scope of this Amendment to suits by citizens against their own State. *See Bd. of Trustees of the Univ. of Ala. v. Garrett*, 531 U.S. 356, 121 S.Ct. 955, 962, 148 L.Ed.2d 866 (2001); *see also Kimel v. Fla. Bd. of Regents*, 528 U.S. 62, 72–73, 120 S.Ct. 631, 145 L.Ed.2d 522 (2000); *Hans v. Louisiana*, 134 U.S. 1, 15, 10 S.Ct. 504, 33 L.Ed. 842 (1890). Furthermore, even though the Commonwealth of Puerto Rico is not a state, it enjoys the protection of the Eleventh Amendment. *See Jusino Mercado v. Commonwealth of Puerto Rico*, 214 F.3d 34, 37–39 (1st Cir.2000); *Ortiz–Feliciano v. Toledo–Dávila*, 175 F.3d 37, 39 (1st Cir.1999); *Futura Development v. Estado Libre Asociado.* 144 F.3d 7,12–13 (1st Cir.1998); *Culebras Enters. Corp. v. Rivera Ríos*, 813 F.2d 506, 516 (1st Cir.1987); *Ramírez v. Puerto Rico Fire Servs.*, 715 F.2d 694, 697 (1st Cir. 1984).

■ The U.S. Supreme Court has established that the Eleventh Amendment protection primarily furthers two goals: the protection of a state's treasury and the protection of its dignitary interest of not

being haled into federal court. *Fresenius Med. Care Cardiovascular Res., Inc. v. P.R. & the Caribbean Cardiovascular Ctr. Corp.*, 322 F.3d 56, 61 (1st Cir.2003) (*citing Fed. Mar. Comm'n v. S.C. State Ports Auth.*, 535 U.S. 743, 122 S.Ct. 1864, 152 L.Ed.2d 962 (2002)). However, the Eleventh Amendment immunity may be waived by the state or "stripped away" by Congress. *Metcalf & Eddy v. P.R.A.S.A.*, 991 F.2d 935, 938 (1st Cir.1993). There are four (4) circumstances in which the Eleventh Amendment protection unravels: (1) when a state consents to be sued in a federal forum; (2) when a state waives its own immunity by statute or the like; (4) when Congress abrogates state immunity ("so long as it speaks clearly and acts in furtherance of particular powers"); and (4) when, provided that circumstances allow, other constitutional imperatives take precedence over the Eleventh Amendment's protection. *Id.* at 938 (citations omitted).

▮ The Eleventh Amendment bar extends to governmental instrumentalities, which are an arm or "alter ego" of the State. *See Ainsworth Aristocrat Int'l Pty. Ltd. v. Tourism Co. of P.R.*, 818 F.2d 1034, 1036 (1st Cir.1987); *Ochoa Realty Corp. v. Faria*, 618 F.Supp. 434, 435 (D.P.R.1985); *Pennhurst State Sch. Hosp. v. Halderman*, 465 U.S. 89, 100, 104 S.Ct. 900, 79 L.Ed.2d 67 (1984); *Mt. Healthy City Sch. Dist. v. Doyle*, 429 U.S. 274, 280–281, 97 S.Ct. 568, 50 L.Ed.2d 471 (1977); *Ursulich v. P.R. Nat'l Guard*, 384 F.Supp. 736, 737–38 (D.P.R.1974). In addition, the Eleventh Amendment also protects state officials in their official capacity. The rationale behind this extension of the Eleventh Amendment protection is that a claim against a state official in his or her official capacity for monetary relief is an action for the recovery of money from the State. *Ford Motor v. Dept. of Treasury*, 323 U.S. 459, 65 S.Ct. 347, 89 L.Ed. 389 (1945);

*Will v. Michigan Dept. of State Police*, 491 U.S. 58, 109 S.Ct. 2304, 105 L.Ed.2d 45 (1989). Hence, a claim against a state official for monetary relief is, in essence, a claim against the State. It is well settled, however, that although the Eleventh Amendment bars suit for monetary damages against the state and its officers, it does not preclude claims for prospective equitable relief. *See Ex Parte Young*, 209 U.S. 123, 155–56, 28 S.Ct. 441, 52 L.Ed. 714 (1908); *Nieves–Márquez v. Commonwealth of Puerto Rico*, 353 F.3d 108, 123 (1st Cir.2003).

▮ In their motion, Defendants aver that they cannot be held liable for money damages under ADEA regardless of whether the EEOC is the claimant. They ground their argument in the Eleventh Amendment and in the U.S. Supreme Court's decision in *Kimel v. Florida Board of Regents*, 528 U.S. 62, 120 S.Ct. 631, 145 L.Ed.2d 522 (2000). In *Kimel,* the U.S. Supreme Court was faced with the question of whether the ADEA was a valid abrogation of the states' Eleventh Amendment Immunity. The Court found that Congress had unambiguously expressed its intention to abrogate such immunity. *Id.* at 78. Nonetheless, the Court also determined that because the ADEA was not valid legislation under § 5 of the Fourteenth Amendment—from which Congress's authority to abrogate Eleventh Amendment immunity stems—it could not abrogate the States' sovereign immunity. *Id.* at 80, 91. Thus, the Eleventh Amendment shields the states, and Puerto Rico, against suits filed by its citizens, or those of another state, for money damages under ADEA.

The EEOC concedes that *Kimel* bars suits by private individuals for money damages under ADEA against a state. This notwithstanding, the EEOC argues that the Eleventh Amendment does not

extend the State's immunity to suits for money damages by the federal government and that they there is no legal authority preventing the EEOC from claiming money damages in favor of private individuals. The EEOC further argues that it has independent authority to investigate and litigate age discrimination claims and that it may pursue money damages in the litigation of said claims even when the claim is asserted against a state.

It is well settled that the prohibitions against age discrimination under ADEA apply to the States. *EEOC v. Wyoming*, 460 U.S. 226, 243, 103 S.Ct. 1054, 75 L.Ed.2d 18 (1983); *see also, State Police for Automatic Retirement Assoc. v. DiFava*, 317 F.3d 6, 12 (1st Cir.2003) (holding that *Kimel* did not alter *Wyoming's* holding nor did it "declare the standards of the ADEA invalid nor inapplicable as they pertained to the states."). Furthermore, there is no dispute that the EEOC may initiate actions for damages in favor of private individuals. *See* 29 U.S.C. § 626(b). A suit by the EEOC in favor of an individual does not mean, however, that the EEOC is stepping in the shoes of that individual. In fact, the U.S. Supreme Court has held that these actions serve the public interest and, as such, the EEOC is not considered a "proxy for the employee". *E.E.O.C. v. Waffle House, Inc.*, 534 U.S. 279, 286–87, 298, 122 S.Ct. 754, 151 L.Ed.2d 755 (2002) (discussing the scope of the EEOC's role in bring suit in the name of a private individual and holding that "the EEOC may bring suit to enjoin an employer from engaging in unlawful employment practices, and to pursue reinstatement, back pay, and compensatory or punitive damages."); *Gen. Tel. Co. v. EEOC*, 446 U.S. 318, 326, 100 S.Ct. 1698, 64 L.Ed.2d 319 (1980) (stating that "although the EEOC can secure specific relief, such as hiring or reinstatement, con-

structive seniority, or damages for back pay or benefits denied, on behalf of discrimination victims, the agency is guided by 'the overriding public interest in equal employment opportunity ... asserted through direct Federal enforcement.' " (citation omitted). *See also, Wyoming*, 460 U.S. at 235, 103 S.Ct. 1054 (entertaining an appeal taken from the EEOC's suit against the state of Wyoming seeking declaratory and injunctive relief, back pay, and liquidated damages on behalf of an individual and similar others who claimed to have been discriminated because of their age).

Defendants insist, however, that the EEOC's prerogative of seeking money damages in favor of individuals is not enough to eliminate a State's protection under the Eleventh Amendment immunity. We disagree inasmuch both the U.S. Supreme Court and the First Circuit have expressed that the Eleventh Amendment does not prevent the U.S. Government, or a federal agency, from bringing suit for money damages against a state in employment discrimination cases. In *Alden v. Maine*, the U.S. Supreme Court held that under the Eleventh Amendment, States are immune from private suits in their own courts for money damages under the Fair Labor Standards Act. 527 U.S. 706, 754, 119 S.Ct. 2240, 144 L.Ed.2d 636 (1999). However, in reaching this conclusion the U.S. Supreme Court commented on the U.S. Government's ability to surpass the Eleventh Amendment immunity of a state and the logic behind differentiating a suit by the federal government from a suit by a private individual. The U.S. Supreme Court stated the following:

> The States have consented, moreover, to some suits pursuant to the plan of the Convention or to subsequent Constitutional Amendments. In ratifying the Constitution, the States consented to suits brought by other States or by the Federal Government. [citation omitted].

A suit which is commenced and prosecuted against a State in the name of the United States by those who are entrusted with the constitutional duty to "take Care that the Laws be faithfully executed," U.S. Const., Art. II, § 3, differs in kind from the suit of an individual: While the Constitution contemplates suits among the members of the federal system as an alternative to extralegal measures, the fear of private suits against nonconsenting States was the central reason given by the Founders who chose to preserve the States' sovereign immunity. Suits brought by the United States itself require the exercise of political responsibility for each suit prosecuted against a State, a control which is absent from a broad delegation to private persons to sue nonconsenting States.

*Id.* at 755–56, 119 S.Ct. 2240.[2] Furthermore, in *DiFava*, the First Circuit Court considered whether, after the U.S. Supreme Court's decision in *Kimel*, the ADEA provisions remained applicable to the States. 317 F.3d at 11–12. In so doing, the First Circuit held that although the States were immune from ADEA money damages claims by private individuals under the Eleventh Amendment Immunity doctrine, that ADEA continued to apply to the States. *Id.* The First Circuit then went on to state that because "the United States itself may enforce the standards of the ADEA against states in both actions

for money damages and for injunctive relief", the EEOC, an agency of the United States, could enforce the provisions of the ADEA against the Commonwealth of Massachusetts. *Id.* (citations omitted).

In fact, the Seventh Circuit considered and rejected exactly the same argument posited by Defendants in this case. In *EEOC v. Bd. of Regents of the Univ. of Wisconsin System,* the EEOC brought an action against the University of Wisconsin System claiming that when it terminated the employment of four persons because of their age it violated the ADEA. 288 F.3d 296 (7th Cir.2002). The EEOC sought, and recovered, damages by obtaining a jury verdict in its favor. *Id.* at 299. The University then appealed the district court's denial of its post trial motions claiming that because the EEOC was "simply standing in the shoes of the individuals," the University enjoyed immunity from suit under the Eleventh Amendment. *Id.* at 299–300. The Seventh Circuit rejected the University's argument. In so doing, it discussed the above-outlined U.S. Supreme Court's statements in *Alden. Id.* It then discussed the U.S. Supreme Court's ruling in *Bd. of Trustees of Univ. of Ala. v. Garrett,* in which the U.S. Supreme Court held that although Americans with Disabilities Act ("ADA") claims for money damages by private individuals against States were barred by the Eleventh Amendment immunity, the United States could bring actions for money dam-

---

**2.** Defendants briefly assert that because Puerto Rico has not ratified the U.S. Constitution it cannot be bound by the U.S. Supreme Court's statements in *Alden.* (Docket # 41 at p. 4 n. 3). Because Defendants have chosen to make that statement in a footnote, we respond in kind. Suffice it to say that, by now, it is clear to the point of transparency that for purposes of the Eleventh Amendment Immunity analysis, Puerto Rico is treated as a state. *Jusino Mercado v. Commonwealth of Puerto Rico,* 214 F.3d 34, 37–39 (1st Cir.2000); *Or-*

*tiz–Feliciano v. Toledo–Dávila,* 175 F.3d 37, 39 (1st Cir.1999); *Futura Development v. Estado Libre Asociado.* 144 F.3d 7,12–13 (1st Cir.1998); *Culebras Enters. Corp. v. Rivera Ríos,* 813 F.2d 506, 516 (1st Cir.1987); *Ramírez v. Puerto Rico Fire Servs.,* 715 F.2d 694, 697 (1st Cir.1983). In fact, Defendants concede to this point when arguing their entitlement to immunity from suit for money damages in the instant case. *See* Docket # 41 at p. 3.

ages against States under the ADA. *Id.* (discussing *Garrett,* 531 U.S. at 374 n. 9, 121 S.Ct. 955). The Seventh Circuit then turned to *Waffle House* in which the U.S. Supreme Court determined that the EEOC is "the master of its own case" and the statute "confers on the agency the authority to evaluate the strength of the public interest at stake." *Id.* at 300 (citing and discussing *Waffle House,* 534 U.S. at 295–96, 122 S.Ct. 754). Relying on the aforementioned Supreme Court cases, the Seventh Circuit ultimately concluded that the Eleventh Amendment does nor prevent the EEOC from bringing a claim for money damages under the ADEA against the University of Wisconsin. *Id.; see also EEOC v. Sidley Austin LLP,* 437 F.3d 695, 696 (7th Cir.2006) (rehashing its discussion in *Bd. of Regents,* 288 F.3d at 300). Taking into account the U.S. Supreme Court's and First Circuit's discussion of this issue, and the Seventh Circuit's reasoning in *Bd. of Regents,* with which we agree, we conclude that *Kimel* does not bar a claim for money damages under the ADEA by the EEOC against Puerto Rico or its instrumentalities. Therefore, Defendants' motion for judgment on the pleadings based on the Eleventh Amendment Immunity doctrine is **DENIED.**[3]

## II. Judiciary Retirement System

 Next, Defendants argue that since state judges are the only members of the Judiciary Retirement System and the ADEA does not protect state judges, the EEOC claims against the Judiciary Retirement System should be dismissed. The EEOC counters that it should be allowed further discovery in order to ensure that only state judges are members of the judiciary's retirement system. We see no need for such discovery. The Judiciary Retirement System was created by Puerto Rico Law 12 of October 19, 1954, 4 P.R. Laws Ann. §§ 233 *et seq.* The retirement system is codified and regulated in sections 233 through 246 of the same title. The statute provides that the purpose of the retirement system is "to establish an efficient and economically sound means of providing pensions and other benefits through setting up a system under which the judges of the Commonwealth of Puerto Rico accumulate reserves for their old age, disability, separation from the service, or death." 4 P.R. Laws Ann. § 233. The statute defines a participant as "any judge who is a member of this System." *Id.* at § 234(10). Lastly, Section 235 expressly limits the membership to the retirement system to "every person who on the operative date of the System holds a position as judge and every person who from and after the operative date of the System holds a position as judge." *Id.* at § 235. Hence, there can be no doubt that the Judiciary Retirement System only provides for state judges to be members of the retirement system. Since judges are not protected by the ADEA, *EEOC v. Commonwealth of Massachusetts,* 858 F.2d 52, 58 (1st Cir.1988) (concluding that Congress did not intend for the ADEA to apply to appointed state judges), Defendants' motion for judgment on the pleadings on EEOC claims against the Judiciary Retirement System is **GRANTED.** Accordingly, the Amended Complaint against the Judiciary Retirement System will be **DISMISSED WITH PREJUDICE.**

---

3. Our holding today is limited to the issue argued by Defendants: whether the EEOC may bring a cause of action for money damages against a state and/or its instrumentalities notwithstanding the Eleventh Amendment immunity doctrine. We express no opinion, however, on whether the EEOC's claims for money damages, as asserted in the Amended Complaint—in favor of an **unspecified amount of unnamed individuals**—are in fact actionable.

## Conclusion

For the reasons set herein, Defendants' motion for judgment on the pleadings is **GRANTED in part and DENIED in part.** Partial Judgment dismissing the Amended Complaint against the Judiciary Retirement System shall be entered accordingly.

**SO ORDERED.**